**Rogers C. B. MORTON**

v.

**Ralph BLOOM, Jr., Trading under the style of Ralph Bloom Jr. Coal Company, Bloom No. 1 Mine.**

**Civ. A. No. 73-384.**

United States District Court,
W. D. Pennsylvania.

Dec. 12, 1973.

I. Avrum Fingeret, Trial Atty., U. S. Dept. of the Interior, Washington, D.C., Richard L. Thornburgh, U. S. Atty., for plaintiff.

Nathanial A. Barbera, Somerset, Pa., for defendant.

## OPINION AND ORDER

GOURLEY, District Judge.

This proceeding has been filed pursuant to the Federal Coal Mine Health and Safety Act of 1969, 30 U.S.C.A. § 801 et seq., hereinafter referred to as the Act. The immediate matter before the Court is plaintiff's request for preliminary and permanent injunctive relief as provided in Section 108 of the Act, 30 U.S.C.A. § 818.

The Court has afforded the parties a full and complete hearing and has considered the briefs and arguments of counsel; and based thereon, the conclusion is compelled that there is no basis for granting the relief requested.

No dispute exists regarding the facts, which may be briefly stated. On Janu-

ary 30, and February 2, 1973, plaintiff's authorized representatives, after properly identifying themselves, requested permission from defendant to enter his mine to conduct inspections of the mine with the express purpose of ascertaining the existence of any danger and of determining whether or not there had been compliance with mandatory health and safety standards, as provided in the Act, in this mine. The mine is a one-man operation maintained solely by defendant without any employees. Defendant refused to grant these agents permission to inspect the mine and when requested by him to leave, they did so. The coal which defendant mines is sold exclusively within Pennsylvania.

The issue which must be decided here is whether defendant must submit to an inspection of his mine and comply with the Act's prescribed health and safety requirements or whether as a one-man operation, the mine in question, the products of which are sold totally intrastate, is not subject to regulation by the Act. The mines which fall within the coverage of the Act are set forth in § 803, which provides as follows:

> "Each coal mine, the products of which enter commerce, or the operations or products of which affect commerce, and each operator of such mine, and every miner in such mine shall be subject to the provisions of this chapter."

It seems logical to infer from this that not all coal mines were intended to be covered by the instant legislation, but only those whose products enter commerce or those whose products or operations affect commerce. It is clear from the definition of commerce contained in § 802 of the Act that that term did not include wholly intrastate trafficking in coal which is the case in this proceeding. Thus the question upon which the ultimate issue turns is whether the operations of or the coal produced by the defendant's mine "affect commerce." While defendant does use some equipment in his mine which was manufactured outside of Pennsylvania, it is so limited that its use would be de minimus.

Unquestionably Congress has the power to regulate wholly intrastate activities under the commerce power, but these activities must be such that their regulation will facilitate the regulation of interstate commerce. As stated in United States v. Wrightwood Dairy Co., 315 U.S. 110, at 119, 62 S.Ct. 523, at 526, 86 L.Ed. 726 (1942), "The commerce power is not confined in its exercise to the regulation of commerce among the states. It extends to those activities intrastate which so affect interstate commerce, or the exertion of the power of Congress over it, as to make regulation of them appropriate means to the attainment of a legitimate end, the effective execution of the granted power to regulate interstate commerce." It seems apparent from this that not every wholly intrastate activity is within the reach of. Congress to regulate, and the Court believes that it was not a part of the legislative intent of Congress to subjugate a one-man, owner-operated coal mine to the requirements of the Act.

As can be gleaned from the legislative history of the Act, the purpose of the legislation was "to protect the health and safety of coal miners, and to combat the steady toll of life, limb, and lung, which terrorizes so many unfortunate families."[1] Needless to say, this laudatory purpose should not be technically thwarted, but neither should it be imposed on those whose activity does not affect interstate commerce.

In short, this Court cannot perceive how the Act which seeks to minimize a predisposition for profits over safety would protect men such as defendant whose one-man mine operation by its very nature requires him to impose and implement his own safety precautions to insure his livelihood. Just a few examples developed in the record of this proceeding will serve to illustrate that the

---

1. 1969 U.S.Code Cong. and Adm.News, p. 2503.

Act was not intended to apply to defendant. If he were subject to the legislation, although he is the only person in the mine, he would be required to:

1. establish a training program for his employees;

2. have a back-up signal on his cars so that no one behind him would be run over;

3. take and report dust samples, although as an operator and not an employee, he cannot get black lung benefits;

4. have a system of transporting injured persons so if he gets hurt, he can put himself on a stretcher and carry himself from the mine, although he does have stretchers outside the mine;

5. and, finally, conduct a search program twice a month. Before he goes into the mine, he is to search himself for cigarettes and matches. If he finds them, he must pay a fine.

Despite the seeming arbitrariness of the Act's requirements as applied to defendant, the question remains regarding whether the operation of defendant's mine or its products "affects commerce" as commerce is defined by the Act.

Under the circumstances presented here, there is no basis for reaching such a conclusion. To affect commerce and thus be subject to the regulations of the Act, the activity must "in a substantial way interfere with or obstruct the exercise of the granted power [i. e., the power to regulate interstate commerce]." United States v. Wrightwood Dairy Co., supra. This Court cannot conclude that defendant's one-man mine operation will substantially interfere with the regulation of interstate commerce. Moreover, the stated purpose of the Act—safety of mine workers—is not affected or diminished by its non-application to defendant. Furthermore, the fact that defendant's mining operation does not comply fully with the requirements of the Act

does not mean that the stated purpose of the Act—the safety of miners—will be thwarted. In other words, to the extent that Congress seeks to regulate mine safety, as opposed to regulating the price of coal through the commerce power, this Court cannot conclude that interstate commerce will be affected by the failure of one-man mine operations, which by their very nature require the exercise of self-imposed safety measures, to comply with the Act. In this regard, the United States Supreme Court has stated that:

" . . . Whether the subject of the regulation in question was 'production,' 'consumption,' or 'marketing' is, therefore, not material for purposes of deciding the question of federal power before us. That an activity is of local character may help in a doubtful case to determine whether Congress intended to reach it. The same consideration might help in determining whether in the absence of Congressional action it would be permissible for the state to exert its power on the subject matter, even though in so doing it to some degree affected interstate commerce. But even if appellee's activity be local and though it may not be regarded as commerce, it may still, whatever its nature, be reached by Congress if it exerts a substantial economic effect on interstate commerce, and this irrespective of whether such effect is what might at some earlier time have been defined as 'direct' or 'indirect'." Wickard v. Filburn, 317 U.S. 111 at 124, 63 S.Ct. 82 at 88, 87 L.Ed. 122.

Defendant's mine is one of local character in which the implementation of safety features required by the Act will not exert a substantial economic effect on interstate commerce. This Court cannot conclude that Congress intended to reach defendant's mine by passage of the Act. Accordingly, plaintiff's request for injunctive relief should be denied.

Findings of fact and conclusions of law have not been separately stated but

are included in the body of the foregoing opinion as specifically authorized by Rule 52(a) of the Federal Rules of Civil Procedure.

An appropriate order is entered.