**Charles SINK, Appellee,**

v.

**Rogers MORTON, Secretary of the Interior, Appellant.**

**No. 75–1292.**

United States Court of Appeals, Fourth Circuit.

Argued May 9, 1975.

Decided Sept. 30, 1975.

---

Michael Kimmel, Atty., Civ. Div., App. Section, United States Dept. of Justice (Irving Jaffe, Acting Asst. Atty. Gen., John A. Field, III, U. S. Atty., and Robert E. Kopp, Atty., Civ. Div., Appellate Section, United States Dept. of Justice, on brief), for appellant.

William W. Talbott, Webster Springs, W. Va., for appellee.

Before HAYNSWORTH, Chief Judge, BOREMAN, Senior Circuit Judge, and RUSSELL, Circuit Judge.

DONALD RUSSELL, Circuit Judge:

From an injunction issued by the District Court against the enforcement of a notice of violation and four withdrawal orders issued by an authorized representative of the defendant Secretary of the

Interior under the provisions of § 814(c), 30 U.S.C.[1] "until * * * an administrative determination of the issues involved" in such notice and orders has been had, the Secretary has appealed. We reverse.

The issue is a narrow one: Was the plaintiff required to exhaust the administrative remedies available to him under the Act for challenging such actions of the Secretary before seeking judicial relief? The facts which give rise to this issue are undisputed. The plaintiff owns and operates an underground coal mine. The only persons employed in the operations are the plaintiff and his son. The maximum production of the mine, when in operation, is in the range of 20 to 30 tons per day. An authorized representative of the Secretary made an inspection of the mine and on November 5, 1974, issued one notice of violation and four withdrawal orders under the authority of § 814(c) of the Act.[2] On November 14, 1974, within the time allowed for appeal, the plaintiff sought administrative review of these actions by the inspector as provided by § 815, 30 U.S.C. He, however, made no effort to secure "temporary relief" from the Secretary pending final determination of his appeal[3] but filed in the District Court on November

19, 1974 this action to enjoin the Secretary from enforcing the notice of violation and orders of withdrawal issued against his mining operation, and for a declaratory judgment that his operations were not subject to the aforesaid Act, or in the alternative, that the Act is unconstitutional and is unconstitutionally vague.[4] After a hearing, the District Court, though concluding that the obligation of the plaintiff to "exhaust his administrative remedies under the Act [was] entirely reasonable and in accord with accepted principles of administrative law," held that the plaintiff had made a showing of irreparable harm, without any countervailing interests of safety, by reason of the "failure of the Secretary of the Interior to utilize his discretion in order to provide a hearing before a mine closure order is issued"[5] and had "had no opportunity to present his case to the appropriate authorities." For these reasons, it granted an injunction against the enforcement of the notice and withdrawal orders "pending a final administrative determination of the issues involved."[6] In so holding, the District Court erred.

The plaintiff's right to judicial relief in this proceeding depended at the outset on his prior exhaustion of admin-

1. It is referred to as the Federal Coal Mine Health and Safety Act of 1969.

2. The validity of such inspections, considered as warrantless searches, was sustained in *Youghiogheny and Ohio Coal Company v. Morton* (3-judge Ct. Ohio 1973), 364 F.Supp. 45, 48–50.

3. § 814(d), 30 U.S.C.

4. The basis for the plaintiff's contention that his operation was not covered by the Act was that his was a "one-man" mine, the effect of which on commerce was trivial and inconsequential. Cf., *Morton v. Bloom* (D.C.Pa.1973) 373 F.Supp. 797, 799. The jurisdictional scope of the Act is stated in § 803, 30 U.S.C. as extending to "[E]ach coal mine, the products of which enter commerce, or the operations or products of which affect commerce * * *." The District Court, in its Findings, specifically omitted any finding on this claim, stating, "[I]t is undetermined whether the products of the mine enter into or affect interstate commerce"

and left to the administrative proceedings the initial determination of this issue of the applicability of the Act to the plaintiff's operations. Cf., 3 Davis, *Administrative Law Treatise*, § 20.04, p. 74. This represents a significant difference between this case and *Bloom*, where the Court specifically found that the mine operation did not "'affect[s] commerce' as commerce is defined by the Act." (373 F.Supp. at 799.)

5. For this ruling, the District Court relied on certain language in *Lucas v. Morton* (3-judge Ct.Pa.1973) 358 F.Supp. 900 at 905. We do not believe the language was intended to go as far as it was extended by the District Court in this case but if it did, we are not inclined to follow it for the reasons subsequently expressed.

6. See, *Lance Roofing Company v. Hodgson* (3-judge Ct.Ga.1972) 343 F.Supp. 685, 689, aff'd. 409 U.S. 1070, 93 S.Ct. 679, 34 L.Ed.2d 659 (1972).

istrative remedies.[7] He, however, admittedly failed to exhaust his administrative remedies before filing this action and the District Court so found. This is true because the plaintiff could, contemporaneous with his appeal to the Secretary, have applied for a temporary stay of the notice and orders of withdrawal.[8] If he had sought such "temporary relief" and been denied it, he could then, but only then, under the Secretary's construction of the Act as stated in this appeal and under our view of the Act, have appealed to this Court (not the District Court) for relief. The District Court, however, concluded, as we have already stated, that if the party against whom the withdrawal orders issued suffers "irreparable harm" and there are "no countervailing interests of safety" involved, it could intervene to grant injunctive relief, even though there had been no exhaustion of administrative remedies. We find no warrant for this exception to the rule requiring the exhaustion of readily available administrative remedies. Irreparable harm, presupposes the absence of an available remedy for relief, whether administrative or judicial.[9] No such situation exists here, as we point out later. If simply a claim of "irreparable harm" would suffice to avoid the "jurisdictional" requirement of exhaustion of readily available administrative remedies for relief, the rule for administrative exhaustion would be completely nullified. Nor did the District Court make any finding that there was an absence of "safety" or "health" hazards involved in the plaintiff's operations unless that is to be implied from its conclusory statement, supported by no subsidiary findings of fact, "that no countervailing interests of safe-

ty are involved." *Cf., Patrician Towers Owners, Inc. v. Fairchild* (4th Cir. 1975) 513 F.2d 216, 221–2. Even had it done so, any such issue should initially have been considered at the administrative level and not urged as a basis for avoiding in this judicial proceeding the rule as to the exhaustion of administrative remedies. After all, it was the expertise of the Secretary and his representatives in the field of mine safety and health hazard that the Congress intended to utilize in the enforcement of the Act and courts, in the exercise of such right of review as they may have under the Act over the Secretary's actions, should defer at least to the initial right of the Secretary to determine these issues of safety and health. Nor is it of any moment that the inspector's withdrawal orders were issued without a hearing. By appeal, the plaintiff can obtain a hearing, which, by the terms of the Act, is to be held as soon as practicable, and he is accorded the right to apply, as an incident to that appeal, for a temporary stay of the orders. Such procedure accords the plaintiff due process.[10] Due process does not command that the right to a hearing be held at any particular point during the administrative proceedings; it is satisfied if that right is given at some point during those proceedings. *Reed v. Franke* (4th Cir. 1961) 297 F.2d 17, 27.

Since there has not been an exhaustion of administrative remedies by the plaintiff, the issuance of an injunction herein was in error and the motion to dismiss the action as premature should have been granted.

Both parties to this appeal have stated to this Court that a hearing on the plain-

---

**7.** *See Pittston Company v. Board of Mine Operations Appeals* (4th Cir. 1972) 460 F.2d 1189, 1191.

A distinction must be made when the proceedings are under § 818, 30 U.S.C. *Bloom,* as we have already observed, was under § 818. The proceedings under § 814 are administrative; the proceedings under § 818 are judicial. The former are accordingly subject to the rule of exhaustion of administrative remedies prior to judicial review; the latter are judicial from the outset.

**8.** § 814(d), 30 U.S.C.

It is accordingly inaccurate to state that the plaintiff was without any "opportunity" to secure an administrative hearing.

**9.** *Yakus v. United States* (1944) 321 U.S. 414, 434–37, 64 S.Ct. 660, 88 L.Ed. 834; *Smith v. Duldner* (6th Cir. 1949) 175 F.2d 629, 630–1.

**10.** *See Lucas v. Morton, supra* (358 F.Supp. at 905) and *Lance Roofing Co. v. Hodgson, supra* (343 F.2d at 689).

tiff's administrative appeal has been had before an administrative law judge, who has concluded that the plaintiff's operations are covered by the Act and that the notice and withdrawal orders are valid. That decision is now on appeal to the Board of Mine Operations Appeals, Department of the Interior. In connection with that appeal, the plaintiff has applied to the Board for a stay of the notice and withdrawal orders. That application was denied because of the pendency of the injunction issued by the District Court. Since we are vacating the injunction granted by the District Court, it would seem in order for the plaintiff to renew his application for a stay with the Board. If the Board denies such stay and the plaintiff appeals, his appeal would be to this Court and not to the District Court.

For the reasons stated herein, the injunction granted the plaintiff by the District Court will be vacated and discharged, without prejudice to the plaintiff's right to renew his application to the Interior Board of Mine Operations Appeals for a stay of the notice and withdrawal orders.