**B & M COAL CORPORATION**

v.

**OFFICE OF SURFACE MINING REC-
LAMATION AND ENFORCEMENT.**

**No. IP 79–973–C.**

United States District Court,
S. D. Indiana,
Indianapolis Division.

Feb. 4, 1982.

Halbert W. Kunz, of Kunz & Kunz, Indianapolis, Ind., for plaintiff.

Alfred T. Ghiorzi, Dept. of Justice, Land and Natural Resources Div., Shelley D. Hayes, Atty., Div. of Surface Mining, Dept. of the Interior, Washington, D. C., and Harold R. Bickham, Asst. U. S. Atty., Indianapolis, Ind., for the Government.

ORDER AND MEMORANDUM
OF DECISION

STECKLER, Chief Judge.

This case is presently before the Court on the Office of Surface Mining Reclamation and Enforcement's (OSM) motion to dismiss B & M Coal Corporation's (B & M Coal)

complaint for failure to state a claim, Fed. R.Civ.P. 12(b)(6), and the OSM's motion for summary judgment on its counterclaim, Fed.R.Civ.P. 56.

The OSM assessed B & M Coal three separate civil penalties for three alleged violations of its surface mining permits and of the Surface Mining Control and Reclamation Act of 1977 (Act), 30 U.S.C. § 1201 *et seq.* After an assessment conference, held pursuant to 30 C.F.R. § 723.17, B & M Coal petitioned the Department of the Interior's Office of Hearings and Appeals (Hearings Office) to review the proposed penalties in accordance with 30 C.F.R. § 723.18 and 43 C.F.R. § 4.1150. However, in contravention of 30 U.S.C. § 1268(c), 30 C.F.R. § 723.18(a) and 43 C.F.R. § 4.1152(b)(1), B & M Coal refused to pay the proposed penalties into an escrow account as a prerequisite to appealing the OSM's action to the Hearings Office which then dismissed B & M Coal's petition due to its refusal to prepay the penalties.[1] Subsequently, B & M Coal did not appeal administratively this dismissal; rather, it instituted the instant action claiming the requisite prepayment constitutes an unlawful taking of its property in violation of the Fifth Amendment's due process clause. The OSM counterclaimed seeking the assessed penalties totaling $2,900.

### A. The Surface Mining Control and Reclamation Act of 1977.

The Act, 30 U.S.C. § 1201 *et seq.*, is a comprehensive statute constructed to "establish a nationwide program to protect society and the environment from the adverse effects of surface coal mining operations." *Id.* at § 1202(a). Congress created the OSM as the device through which the Secretary of the Interior (Secretary) exercises primary responsibility for administering and implementing the Act by promulgating regulations enforcing the Act's provisions. *Id.* at § 1211(c). The primary regulatory and enforcement provisions are codified at 30 U.S.C. §§ 1251–1279. Congress established a two-phased program for surface coal mining regulation consisting of an interim phase followed by a permanent phase. *Id.* at § 1251(a, b). The interim phase included the immediate federal promulgation and enforcement of certain environmental protection performance standards delineated in the Act which standards were complemented by continuing state regulation. *Id.* at § 1251(a). The Secretary published these interim regulations on December 13, 1977. 42 Fed.Reg. 62,639 (1977); 30 C.F.R. ch. VII, subch. B, pp. 322–390. During the permanent phase each state, seeking permanent authority over the surface coal mining operations on nonfederal land within the state's borders, must adopt a regulatory program containing the full panoply of federal performance standards. Responsibility for enforcing the permanent programs rests with either the state or federal government. 30 U.S.C. § 1251(b). Additionally, § 1251(b) dictates that the Secretary create regulations establishing a permanent regulatory program, encompassing all the performance standards mandated by the Act, for those states failing to submit an acceptable program. The Secretary published these permanent regulations on March 13, 1979. 44 Fed.Reg. 14,902 (1979); 30 C.F.R. ch. VII, subch. C, pp. 391–414.[2]

---

**1.** In its complaint B & M Coal specifically attacks only 30 U.S.C. § 1268(c) and 43 C.F.R. § 4.1152(b)(1), overlooking 30 C.F.R. § 723.-18(a) which also requires payment of the proposed penalty as a condition to appealing the penalty to the Hearings Office. Nevertheless, the Court will include § 723.18(a) in resolving the issues before it.

**2.** The Court need not describe in greater detail the various provisions of the Act or the implementing regulations which are not relevant to those challenged herein as such descriptions are provided in *Hodel v. Indiana*, 452 U.S. 314, 317–320, 101 S.Ct. 2376, 2379–2381, 69 L.Ed.2d 40 (1981); *Hodel v. Virginia Surface Mining & Reclamation Ass'n., Inc.*, 452 U.S. 264, 268–272, 101 S.Ct. 2352, 2356–2358, 69 L.Ed.2d 1 (1981); *In re Surface Mining Regul. Litig.*, 627 F.2d 1346, 1350–1353 (D.C.Cir. 1980); *Indiana v. Andrus*, 501 F.Supp. 452, 455–456 (S.D.Ind.1980), rev. sub nom., 452 U.S. 314, 101 S.Ct. 2376, 69 L.Ed.2d 40 *supra*; and *Virginia Surface Mining & Reclamation Ass'n., Inc. v. Andrus*, 483 F.Supp. 425, 428–429 (W.D.

Through its complaint B & M Coal essentially raises two constitutional challenges to 30 U.S.C. § 1268(c), 30 C.F.R. § 723.18(a) and 43 C.F.R. § 4.1152(b)(1), (c). First, B & M Coal claims its Fifth Amendment right protecting against the taking of its property without due process of the law is violated by the requirement of these three sections that it pay the proposed penalties into an escrow account prior to a hearing on its petition to review the proposed penalties. Second, B & M Coal argues its Fifth Amendment due process right was violated by the OSM's original assessment of a proposed penalty without a hearing.

### B. *Undisputed Facts.*

B & M Coal does not dispute the OSM's recitation of facts contained in its brief supporting its motions to dismiss and for summary judgment. On September 20, 1978, the OSM issued the initial notice of violations consisting of failures to remove the "B" horizon of soil prior to a blasting operation and to control surface runoffs on B & M Coal's permit area located in southern Indiana. Two weeks later the OSM proposed a penalty assessment of $2,000 for this initial violation. B & M Coal failed to pay the $2,000 and the OSM, by a letter dated March 2, 1979, demanded payment. A second notice, informing B & M Coal of three new infractions (mining within 100 feet of a road without a variance plus failures to maintain facilities to treat discharged water or to post perimeter markers), was issued on March 8, 1979. The OSM on March 12, 1979, posted its final notice for failing to meet effluent limitations for discharge from the disturbed area. On March 23, 1979, the OSM assessed a proposed penalty of $1,700 for the second violation and $3,200 was assessed as a proposed penalty for the third violation on April 27, 1979.

On April 2, 1979, B & M Coal requested, pursuant to 30 C.F.R. § 723.17, an assessment conference on all three violation notices. This conference was held on June 13, 1979, after which the OSM informed B & M Coal that the proposed penalties for the three notices were being reduced to $800, $1,300, and $800 respectively. On June 25, 1979, pursuant to 30 C.F.R. § 723.18 and 43 C.F.R. § 4.1150, B & M Coal petitioned the Hearings Division of the Interior Department's Hearings Office for an evidentiary hearing to review the proposed penalties. Also, B & M Coal filed an amended petition to review on September 13, 1979. Nevertheless, it refused to pay the proposed total $2,900 penalty into an escrow account prior to the requested hearing as required by 30 U.S.C. § 1268(c), 30 C.F.R. § 723.18(a) and 43 C.F.R. § 4.1152(b)(1). The OSM on September 19, 1979, moved to dismiss B & M Coal's review petition claiming it was not timely filed and, further, that B & M Coal had failed to prepay the proposed penalties totaling $2,900. B & M Coal unsuccessfully opposed this dismissal motion and on October 25, 1979, an administrative law judge in the Hearings Division of the Hearings Office dismissed B & M Coal's petition to review due to its refusal to prepay the proposed penalties. Subsequently, B & M Coal failed to appeal administratively this dismissal; rather, it commenced this action raising the previously stated constitutional challenges.

### C. *Jurisdiction.*

■ The Court's jurisdiction to resolve the matters before it is premised upon 30 U.S.C. § 1276(a)(1) which provides, in pertinent part:

"Any action by the Secretary [of the Interior] promulgating rules or regulations including standards pursuant to [30 U.S.C. §§ 1251, 1265, 1266 and 1273] shall

Va.1980), *rev. sub nom.*, 452 U.S. 264, 101 S.Ct. 2352, 69 L.Ed.2d 1, *supra.*

The district courts in both *Indiana v. Andrus, supra*, and *Virginia Surface Mining & Reclamation Ass'n., supra*, ruled unconstitutional the civil penalty provisions challenged herein by B & M Coal. However, on appeal the Supreme

Court vacated the district courts' decisions on these provisions and ruled that such challenges were premature since there had not been assessed any civil penalty in either case. *Hodel v. Indiana, supra*, 101 S.Ct. at 2388; *Hodel v. Virginia Surface Mining & Reclamation Ass'n., supra*, 101 S.Ct. at 2374.

be subject to judicial review in the United States District Court for the District of Columbia Circuit. Any other action constituting rulemaking by the Secretary shall be subject to judicial review only by the United States District Court for the District in which the surface coal mining operation is located."

Sections 1251, 1265, 1266, and 1273 pertain to the promulgation of interim regulatory procedures, permit requirements plus the promulgation and implementation of the federal land program as pertinent to surface coal mining operations. B & M Coal does not challenge the Department's rulemaking; rather, it questions whether its procedural due process guarantees have been violated by the Secretary's application of the Act or the implementing regulations, 30 U.S.C. § 1268(c), 30 C.F.R. § 723.18(a) and 43 C.F.R. § 4.1152(b)(1). *See generally, In re Surface Mining Regul. Litig.*, 456 F.Supp. 1301 (D.D.C.1978), *aff'd in pt., rev'd in pt., supra*, 627 F.2d at 1346. Consequently, B & M Coal's action entails "[a]ny other action constituting rulemaking by the Secretary [which is] subject to judicial review only by the United States District Court for the District in which the surface coal mining operation is located." 30 U.S.C. § 1276(a)(1). Because this lawsuit arose from a B & M Coal surface mining operation located in the Southern District of Indiana, this Court has jurisdiction to hear this complaint.

■ At the outset of ruling upon the OSM's motion to dismiss, the Court notes it must consider the record from the OSM and the Hearings Office which developed from B & M Coal's alleged violations. Because matters outside the pleadings are being considered, the OSM's motion to dismiss will be resolved in the same manner as its motion for summary judgment on its counterclaim. Fed.R.Civ.P. 56; *Carter v. Stanton*, 405 U.S. 669, 92 S.Ct. 1232, 31 L.Ed.2d 569 (1972), *on remand*, 350 F.Supp. 1337 (S.D.Ind.1972). Significantly, an action to enjoin enforcement or otherwise obtain review of an administrative order is well suited for utilizing the summary judgment mechanism because B & M Coal has no

right to a trial de novo and is limited to a review of the record before the Department. *Manufacturing Chemists Ass'n v. Costle*, 455 F.Supp. 968 (W.D.La.1978). A review of the pleadings and record reveals there are no disputes as to genuine issues of any material facts. Instead, the parties contest the constitutionality of the Act and the implementing regulations. Therefore, if as a matter of law the Act and the implementing regulations are constitutional, the OSM will be entitled to summary judgment on both the complaint and its counterclaim. *Peoples Outfitting Co., Inc. v. General Elec. Credit Corp., Inc.*, 549 F.2d 42 (7th Cir. 1977); *American Cas. Co. of Reading, Pa. v. Reidy*, 386 F.2d 795 (7th Cir. 1967). Accordingly, at this juncture the question to be resolved is the constitutionality of 30 U.S.C. § 1268(c) and its implementing regulations.

### D. The Constitutionality of 30 U.S.C. § 1268(c), 30 C.F.R. § 723.18(a) and 43 C.F.R. § 4.1152(b)(1).

■ B & M Coal's constitutional challenge to the Act and its implementing regulations initially focuses upon those provisions requiring payment of the proposed penalty as a prerequisite to a hearing reviewing the amount of the penalty. B & M Coal argues such a prerequisite violates its Fifth Amendment right against a taking of property without due process of law. However, in advancing its argument B & M Coal fails to note the fact that the Supreme Court continually has upheld the summary tax collection procedure of the Internal Revenue Code requiring a taxpayer to pay the assessed tax prior to challenging it by a refund suit brought in federal court. This summary collection procedure is constitutional provided there is an adequate opportunity for a post-seizure determination of the taxpayer's rights. *See G. M. Leasing Corp. v. United States*, 429 U.S. 338, 352, n. 18, 97 S.Ct. 619, 628, n. 18, 50 L.Ed.2d 530 (1977); *Commissioner v. Shapiro*, 424 U.S. 614, 630–632, n. 12, 96 S.Ct. 1062, 1072–1073, n. 12, 47 L.Ed.2d 278 (1976); *Phillips v. Commissioner*, 283 U.S. 589, 51 S.Ct. 608, 75

L.Ed. 1289 (1931); *accord, Myers v. United States*, 647 F.2d 591 (5th Cir. 1981); *Ginter v. Southern*, 611 F.2d 1226 (8th Cir. 1979); *Lewin v. Commissioner of Int. Rev.*, 569 F.2d 444 (7th Cir. 1978); *see also Flora v. United States*, 357 U.S. 63, 78 S.Ct. 1079, 2 L.Ed.2d 1165 (1958), *aff'd*, 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960). "Where only property rights are involved, mere postponement of the judicial enquiry is not a denial of due process, if the opportunity given for the ultimate judicial determination of the liability is adequate." *Phillips v. Commissioner, supra*, 283 U.S. at 596–597, 51 S.Ct. at 611–612. (Citations omitted.)

In light of the *Phillips* dictum and the above-stated general rule, B & M Coal's first issue transposes into the second issue it posits, *i.e.*, are the procedures required by 30 U.S.C. § 1268(c) and its implementing regulations violative of the Fifth Amendment's due process clause.

■ Generally the Constitution requires notice and a hearing prior to a governmental taking of private property. For example, where an individual would lose basic subsistence sources, absent adequate procedural safeguards, an evidentiary hearing must be held to provide a welfare recipient with procedural due process prior to the termination of welfare benefits. *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Nevertheless, exceptions to the general rule exist in extraordinary or emergency situations where a significant government interest justifies delaying the hearing until after the seizure of the property rights. *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971). In such situations the Supreme Court upholds summary administrative action prior to a hearing to protect the governmental or public interest. *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974) (seizure of rental yacht carrying marijuana); *Ewing v. Mytinger & Casselberry, Inc.*, 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950) (seizure of mislabeled vitamin products); *Bowles v. Willingham*, 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892 (1944) (rent control orders); *Phillips v. Commissioner, supra*, 283 U.S. at 595–596, 51 S.Ct. at 611 (collection of federal revenue); *Central Union Trust Co. v. Garvan*, 254 U.S. 554, 41 S.Ct. 214, 65 L.Ed. 403 (1921) (seizure of enemy property); *accord, General Mills, Inc. v. Jones*, 530 F.2d 1317 (9th Cir. 1975), *aff'd sub nom.*, 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977) (cessation of sale of mislabeled foods); *Sink v. Morton*, 529 F.2d 601 (4th Cir. 1975) (withdrawal order under the Federal Coal Mine Health & Safety Act may be issued without a prior hearing); *Case v. Weinberger*, 523 F.2d 602 (2d Cir. 1975) (decertification of a nursing home); *Air East, Inc. v. National Trans. Safety Bd.*, 512 F.2d 1227 (3d Cir. 1974), *cert. denied*, 423 U.S. 863, 96 S.Ct. 122, 46 L.Ed.2d 92 (1975) (decertification of air taxi line); *R. A. Holman & Co. v. S.E.C.*, 299 F.2d 127 (D.C.Cir.1961), *cert. denied*, 370 U.S. 911, 82 S.Ct. 1257, 8 L.Ed.2d 404 (1962) (suspension of exemption from stock registration requirement); *In re Surface Mining Regul. Litig., supra*, 456 F.Supp. at 1301 (prehearing cessation orders issued pursuant to 30 U.S.C. § 1271 are constitutional).

A close examination of the procedures provided in the Act and the implementing regulations for assessing and challenging a civil penalty reveals these procedures satisfy the requirements of due process.[3] The Secretary may issue notices of violations to any operator for violating the Act or any permit condition required by the Act where the "violation does not create an imminent danger to the health or safety of the public, or cannot be reasonably expected to cause significant, imminent environmental harm

**3.** At the outset of this examination the Court notes that 30 C.F.R. § 722 *et seq.* governs the issuance of notices of violation of the Act. *Id.* at § 722.1. 30 C.F.R. § 723 *et seq.* constitutes the *substantive* regulations for imposing and appealing civil penalties for such violations. 43 C.F.R. § 4.1150 *et seq.* forms the *procedural* regulations for appealing the existence of a violation as well as for the assessment and appeal of the civil penalty.

to land, air or water sources, ....”; 30 U.S.C. § 1271(a)(3); *see* 30 C.F.R. § 722.12.[4] Within ten days of receiving the violation notice, the operator may submit to the OSM information relevant to the violation to be used in calculating the proposed penalty. 30 C.F.R. § 723.16(a).

The Secretary must determine within thirty days of issuing the notice whether to assess a civil penalty, calculate it and inform the operator of the amount. This determination must utilize a point system premised upon four criteria, stated at 30 C.F.R. § 723.11(c)(1–4), which are:

“(1) The [operator's] history of previous violations at the particular coal mining operation;

(2) the seriousness of the violation;

(3) whether the [operator] is negligent; and

(4) the demonstrated good faith of the [operator] in attempting to achieve rapid compliance after notification of the violation.”

The amount of points assessed according to each criteria is controlled by objective factors stated in separate subsections of § 723.12. *Id.*, at § 723.12(b–3).[5] If the total points accumulated are “more than thirty, a penalty *shall* be assessed.” *Id.* at § 723.12(a) (emphasis added). Once the total number of points assigned to a violation is determined, the OSM calculates the proposed penalty according to a table listed at § 723.13 under which table the penalties range from $20 for one point up to a maximum of $5,000 for seventy or more points.

If the operator within fifteen days of receiving the proposed penalty requests an assessment conference, the OSM must not finalize the amount of the penalty until after the conference is conducted. At this conference, which must be held within sixty days of the date it is requested, the operator is entitled to present information relevant to the proposed penalty and, after the conference is concluded, the OSM may recalculate the amount of the proposed penalty or vacate it entirely. *Id.* at § 723.18(c); 43 C.F.R. § 4.1157. Once the conference concludes, the operator has fifteen days to petition the Hearings Division within the Hearings Office for an evidentiary hearing to review the proposed penalty. 30 C.F.R. § 723.18(b); 43 C.F.R. § 4.1151(b).[6] However, if the operator fails to pay into escrow the full amount of the proposed penalty, all legal rights to contest the violation or the amount of the penalty are waived. 30 U.S.C. § 1268(c); 43 C.F.R. § 4.1152(c). When the hearing is held by an administrative law judge within the Hearings Division, it is on the record and subject to 5 U.S.C. § 554. 30 U.S.C. § 1268(b). The administrative law judge must formulate his decision utilizing the criteria, point system and conversion table set forth at 30 C.F.R. §§ 723.11(c)(1–4), 723.12–723.13. *Id.* at § 723.18(c); 43 C.F.R. § 4.1157. The judge's decision may be appealed to the Board of Surface Mining and Reclamation Appeals within the Hearings Office of the OSM. *Id.* at § 4.1158. Once the penalty is finalized by the Board and the Secretary orders the operator to pay it, he may seek

4. If the Secretary determines the violation creates “an imminent danger” to the public health or safety, or is “reasonably expected to cause significant, imminent environmental harm,” the Secretary must issue an order to the operator to cease surface coal mining and reclamation operations. *Id.* at § 1271(a)(2).

5. For example, the OSM “shall assign one point for each past violation ....” *Id.* at § 723.-12(b). Similarly, in determining “the seriousness of the violation,” § 723.11(c)(2), *supra*, “the probability of the occurrence of the event which a violated standard is designed to prevent may account for a maximum of 15 penalty points,” § 723.12(c)(1), to be assessed in ac-

cordance with the following table from § 723.-12(c)(1).

| Probability of occurrence | Points |
|---|---|
| None or insignificant | 0–5 |
| Unlikely | 5–10 |
| Likely | 10–15 |
| Occurred | 15 |

The point system for negligence and good faith in attempting to achieve compliance are delineated at § 723.12(d, e), respectively.

6. If the operator fails to request a conference, he must petition the Hearings Division of the Hearings Office to review the proposed penalty within 30 days of receiving it. 30 C.F.R. § 723.18(a); 43 C.F.R. § 4.1151(a).

judicial review in the district court within thirty days after entry of the order. 30 U.S.C. § 1276(a)(2). Ultimately, if the operator succeeds in reducing or eliminating the penalty, "the Secretary shall within thirty days remit the appropriate amount to the [operator], with interest at the rate of 6 percent, or at the prevailing Department of the Treasury rate, whichever is greater." *Id.* at § 1268(c); 43 C.F.R. § 4.1157(c).

The above description of the civil penalty assessment procedures authorized by § 1268 of the Act and implemented by 30 C.F.R. § 723 *et seq.* plus 43 C.F.R. § 4.1150 *et seq.* demonstrates that these procedures comport with the due process requirements of the Fifth Amendment. "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrisey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). Accordingly, determining whether the Act's administrative procedures, as implemented by the regulations, are constitutionally sufficient

"requires consideration of three distinct factors. First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedure used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Mathews v. Eldridge, supra,* 424 U.S. at 335, 96 S.Ct. at 903 (citation omitted).

B & M Coal's private interest which is adversely affected by the current procedure is of a lesser magnitude than in the case of a welfare recipient who loses his very means of subsistence as did the claimants in *Goldberg v. Kelly, supra,* 397 U.S. at 254, 90 S.Ct. at 1011. B & M Coal continues to possess its source of existence, *i.e.,* mining and marketing coal, while it challenges the proposed penalty through the appropriate levels of administrative and judicial review. Further, the risk of an erroneous depriva-

tion of B & M Coal's interest is greatly reduced because the scope of procedures preceding finalization of the assessment allows B & M Coal to challenge the penalty at the assessment conference, before the Hearings Office and finally through the federal judiciary. Significantly, if B & M Coal successfully challenges the penalty, the Secretary must return the amount paid into escrow plus interest at the rate of 6 percent or at the prevailing Department of the Treasury rate—whichever is greater. This requirement insures that B & M Coal's interest is protected through adequate compensation for the temporary loss of use of its money while it challenges the penalties. Finally, the Government's interest, compliance with the Act, requires the prompt assessment of civil penalties since Congress designed these procedures to reduce the operators' opportunities to stall their compliance with the Act. Further, Congress favored these streamlined procedures to avoid the problems encountered by the Department in administering the Federal Coal Mine Health and Safety Act of 1969. 120 Cong.Rec. 24,594 (1974). Consequently, by promoting compliance with the Act, these procedures support the purpose of the Act which is "to protect society and the environment from the adverse effects of surface coal mining operations." 30 U.S.C. § 1202(a).

By reason of the foregoing, the Court holds that 30 U.S.C. § 1268(c), 30 C.F.R. § 723.18(a) and 43 C.F.R. § 4.1152(b)(1), (c) protect an important governmental interest justifying the payment of a proposed penalty prior to appealing the penalty to the Hearings Office. Accordingly, §§ 1268(c), 723.18(a) and 4.1152(b)(1), (c) are constitutional and do not violate the Fifth Amendment's prohibition against a governmental taking of property absent due process of law.

As a consequence of the above reasoning and holding, the OSM's motion to dismiss B & M Coal's complaint for failure to state a claim, Fed.R.Civ.P. 12(b)(6), must be and hereby is GRANTED. Finally, in light of the undisputed facts eliminating any genu-

ine issue of a material fact plus the Court's holding that as a matter of law the challenged provision of the Act and its implementing regulations are constitutional, the OSM's motion for summary judgment, Fed. R.Civ.P. 56, on its counterclaim must be and hereby is GRANTED in the amount of $2,900.

IT IS SO ORDERED.