**JAWARD CORPORATION, Plaintiff,**

v.

**James G. WATT, Secretary Department of the Interior, Defendant.**

**Civ. A. No. 83–0103–B.**

United States District Court,
W.D. Virginia,
Big Stone Gap Division.

June 13, 1983.

Henry S. Stout, Jr., Norton, Va., for plaintiff.

Morgan E. Scott, Asst. U.S. Atty., Abingdon, Va., Larry M. Corcoran, Washington, D.C., Walton D. Morris, Knoxville, Tenn., for defendant.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

This case is before the court on the plaintiff's petition for a temporary injunction to restrain the defendant from enforcing a cessation order issued on Friday, April 8, 1983 by Earl Bandy, an authorized representative of the Office of Surface Mining Reclamation Enforcement [hereinafter "OSM"]. The order was entered against Jaward Corporation for the alleged violation of "Section 521(a)(2) of Public Law 95–87 [the Surface Mining Control and Reclamation Act]; Section 843.11(a)(2)."

A mine consisting of two acres or less may be operated under a permit issued under a Chapter 23 permit (Title 45.1 of the Code of Virginia (1950)) and is exempt from many regulations.[1] Operation of a larger mine must be pursuant to a Chapter 19 permit and is thus subject to extensive reg-

ulation. Plaintiff contends that it is exempt from regulation under the Surface Mining Control and Reclamation Act of 1977 [hereinafter SMCRA], 30 U.S.C. § 1201, *et seq.* because its mine is composed of two acres or less, which are exempt from the Act. It is conceded in the affidavit filed by Inspector Bandy that the faced-up area of the deep mine operated by the plaintiff consists of 1.2 acres. However, Inspector Bandy states that the operation affects more than two acres because of an access road and certain underground disturbance or "shadow area." In essence, the plaintiff is challenging the OSM's regulation which defines criteria for the two-acre exemption; to-wit, 30 C.F.R. 700.11.

At the outset, the court considers it necessary to ascertain whether the court has jurisdiction to hear this petition for a temporary injunction.

## I. JURISDICTION

■ Defendant asserts that this court does not have jurisdiction to hear a complaint challenging a national mining regulation. Defendant, relying on *Tug Valley Recovery Center v. Watt,* 703 F.2d 796 (4th Cir.1983), argues that jurisdiction over issues concerning the implementation or enforcement of regulations rests solely in the United States District Court for the District of Columbia. In that case, Tug Valley filed suit in the United States District Court for the Southern District of West Virginia alleging, *inter alia,* that the Secretary breached his statutory and constitutional duties by approving a state environmental regulatory program that included a board of review composed of individuals representing specific interest groups. The district court dismissed the case for lack of subject matter jurisdiction, holding that under Federal law, Tug Valley's complaint could only be brought in the United States District Court for the District of Columbia.

---

1. The two-acre exemption is stated in the SMCRA as follows:

    The provisions of this chapter shall not apply to any of the following activities:

    (2) the extraction of coal for commercial purposes where the surface mining operation affects two acres or less; . . . . 30 U.S.C. § 1278.

On appeal, Tug Valley disputed the district court's characterization of its suit as an attack on the validity of a federal regulation, 30 C.F.R. § 705.5. Tug Valley maintained that it sought to enforce the regulation. Accordingly, the Fourth Circuit directed its review to the issue of whether the plaintiffs were asking for enforcement of the regulation or whether the plaintiffs were challenging the validity of the regulation. The Fourth Circuit determined that Tug Valley's complaint challenged the validity of 30 C.F.R. § 705.5 and affirmed the District Court's determination of lack of jurisdiction.[2]

Therefore, Section 526(a)(1) of the SMCRA (30 U.S.C. § 1276), which outlines the proper judicial review of the act, has not been presented to the Fourth Circuit. The decision in *Tug Valley* should be contained to its facts and not interpreted to be a review or a determination of the meaning of Section 526(a)(1). Nevertheless, the court does not deem it necessary to rely solely upon Section 526(a)(1) for grant of jurisdiction. The court is of the opinion that jurisdiction in this case is well defined in other regards. For purposes of this case, and in particular for the temporary injunction, the court will rely on the jurisdiction which is set forth as follows.

The plaintiff alleges that the manner in which this cessation order was presented was a denial of due process in that the defendant denied plaintiff an opportunity for an administrative hearing to contest the cessation order and that the defendant does not intend to provide the plaintiff with other relief provided by the Act. The court is therefore of the opinion that it would be an act of futility to require exhaustion of administrative remedies in this case. Accordingly, the plaintiff seeks a review of 30 C.F.R. § 700.11 alleging that the application of this regulation in effect denies his right of due process.

In the case of *B & M Coal v. OSM,* 531 F.Supp. 677 (S.D.Ind.1982), the plaintiff, B

& M Coal, claimed that the application of a regulation promulgated by OSM violated its rights of due process. The United States District Court for the Southern District of Indiana in that case opined:

> B & M Coal does not challenge the Department's rulemaking; rather, it questions whether its procedural due process guarantees have been violated by the Secretary's application of the Act or the implementing regulations ... *See generally, In re Surface Mining Regulations Litigation,* 456 F.Supp. 1301 (D.D.C.1978), aff'd in pt., rev'd in pt., *supra,* 627 F.2d at 1346 [ (D.C.1980) ]. Consequently, B & M Coal's action entails '[a]ny other action constituting rulemaking by the Secretary [which is] subject to judicial review only by the United States District Court for the District in which the surface mining operation is located.' 30 U.S.C. § 1276(a)(1).

531 F.Supp. at 680.

Therefore, this court, being the district court in which the surface mining operation is located, has jurisdiction to hear procedural due process violations as a result of the Secretary's application of the Act, pursuant to § 526(a)(1) of SMCRA.

In addition, as previously noted, Inspector Bandy issued a cessation order charging a violation of Section 521(a)(2) of Public Law 95–87, 30 U.S.C. §§ 1271(a)(2). Subsection (c) of 30 U.S.C. § 1276 provides that this court shall have power to grant temporary relief as it deems appropriate, pending final determination of any proceedings, if the cessation order has been issued by the Secretary under subparagraphs (a)(2), (a)(3), or (a)(4) of Section 1271 of the SMCRA for cessation of coal mining operations.

## II.  TEMPORARY INJUNCTION CRITERIA

Only three conditions are set forth as prerequisites for a temporary injunction: (1) the parties to the proceeding be notified

---

**2.** *Virginia Surface Mining and Reclamation Ass'n, Inc. v. Andrus,* 604 F.2d 312 (4th Cir., 1979).

and given an opportunity to be heard on a request for temporary relief; (2) that such relief will not adversely affect the public health or safety or cause significant imminent environmental harm to land, air, or water resources; and, (3) a showing of a substantial likelihood of prevailing on the merits. 30 U.S.C. § 1276(c) (1983 Supp.). The first requirement has clearly been satisfied in the instant action as all parties have appeared before the court and have waived any jurisdictional issue other than the one at issue.

a. *Whether Or Not Granting Relief In This Case Will Adversely Affect The Public Health Or Safety, Or Cause Significant Environmental Harm To Land, Air or Water Resources*

There is no evidence that the plaintiff's operations during the period that a temporary injunction would be in effect would adversely affect the public health or safety, or cause significant imminent environmental harm to land, air or water resources. Indeed, the uncontroverted testimony in this case is to the contrary. The testimony reveals that the plaintiff is operating under a permit granted by the Commonwealth of Virginia pursuant to Chapter 23 of Title 45.1 of the 1950 Code of Virginia, as amended. This Statute was enacted by the Commonwealth of Virginia prior to the enactment of Federal regulation to control two-acre mining operations which are exempt from the Federal Act. The Commonwealth of Virginia, the only state to promulgate such controls, has enacted stringent environmental controls and polices the two-acre mines to insure compliance by frequent state inspection. The chief enforcing officer of this law has expressed the opinion that Virginia requires that exempt two-acre mines be operated in a manner which will not harm the environment. He opines that the Virginia law fully protects the environment. Jaward's mines are in compliance with Virginia law, and the federal inspector has found no violations of regulations applicable to non-exempt mines. The only charge that he has instituted is the failure to have a Chapter 19, Title 45.1, Code of Virginia permit that is required for mines which do not come under the two-acre exemption.

The defendant has presented no evidence to the court that the environment is being harmed by the operations of these mines. The defendant speculates that there could be harm based upon alleged environmental harm caused by "wild cat" mining operations in Tennessee. In these "wild cat" operations, operators never obtained a permit from either the state or the federal government. The only personal knowledge presented by Mr. Harris, Director of the OSM, is to the effect that he has made a helicopter tour of two-acre exemption mine areas in which some violations of the Act were pointed out to him. In all the documents filed with this court, which consist of extensive violations, the only reference to violations are some mining operations in Lee County, Virginia and the Turner operation in Wise County, Virginia. It is the court's understanding that these violations occurred in 1979 and 1980, at the time when hearings were being conducted for the purpose of promulgating regulations pertaining to the two-acre exemptions. The court finds the defendant's evidence insufficient to establish that the environment is being harmed by the plaintiff's operations at this time.

The crux of the Secretary's argument is not that the environment is being harmed, but rather that the plaintiff's mines are not eligible for a two-acre exemption as federal law defines the exemption. The defendant argues that the plaintiff is operating illegally under a Chapter 23, Title 45.1 of the Code of Virginia permit since Chapter 23 applies only to two-acre exempt mines. The defendant argues that the plaintiff is operating a mine which is larger than two acres and thus must obtain a permit under Chapter 19, Title 45.1 of the Code of Virginia, which applies to mines of areas over two acres. Therefore, the real dispute is over the manner in which "two-acre mine" is defined, not the effect of the plaintiff's mining operations on the environment.

b. *Does The Plaintiff Have a Reasonable Chance To Prevail Upon The Merits?*

As previously stated, the evidence in this case reveals that the regulation defining two-acre mines enacted by OSM has the effect of eliminating the two-acre exemption. In other words, Congress might as well have not granted the exemption, but left it entirely up to the administration to determine whether to regulate two-acre mines.

Under the Secretary's definition of two-acre mines, the area below the surface is part of the total area calculation even though this is a surface mining act. The evidence indicates that in some instances, the regulation, as now drawn, could be shown to be unreasonable, arbitrary and capricious. When an operator commences a mining operation, the mere act of opening the mine could disturb a two-acre area below the surface. The justification for bringing in the surface below the mine is because of the possibility of subsidence. No evidence was presented in this case, or in any of the hearings conducted by OSM, that subsidence has been a problem or that there is any serious possibility of harm from subsidence in Virginia.

All roads connected to the mining operation in any way are also considered as part of the surface in determining whether or not two acres have been disturbed under the federal regulation. In many instances, and indeed in this case, the road which goes to the mines has been in existence for many, many years and was not built in connection with this mine, but was built to serve other mines. It is very common for one private secondary road to be constructed to serve as many as twenty-five mines. Roads cause no harm to the environment for the only operation involved in the upkeep of the road is re-rocking or re-working the road. It appears at this stage of the proceedings that to include the area of roads that were not even built in connection with the mine, in calculating the total mine area, could prove to be unreasonable.

The regulation also provides that if a person owns two or more mines within five aerial miles of one another, then the combined areas of the mines will be calculated as one mine in determining whether the mines qualify for the two-acre exemption. Obviously, if two mines are opened side by side, with common ownership, workmen, and managers, the operation could be a subterfuge to get around the two-acre exemption. Certainly some regulation would be reasonable to prevent this abuse. However, to blanket all mines that have interlocking ownership, even where they are several miles apart, and consider them as one mine in considering the two-acre exemption may be found unreasonable in a later hearing. It would appear that certain standards could be set out in the regulation as to the nature and type of ownership, the nature of the interconnection of the mines and other factors which should be taken into consideration in determining whether an operation has exceeded the exempt two acres.

The practice of large coal companies of leasing out their land to small coal operators has existed for more than forty years.[3] Obviously, Congress was aware of this practice when the two-acre exemption was created. The two-acre mines are leased to small coal companies in the more isolated areas, usually small hollows and pockets, where large scale mining is not feasible. It is contemplated that lighter machinery, fewer men and less expense will be involved and the net result is that this coal can be produced more inexpensively than coal in the larger mines.

The largest prohibitive factor in opening a small mine is "start up" capital. The evidence in this case shows that if the two-acre exemption is eliminated, huge fees for engineering services (which may be unnecessary) that are required for non-exempt mines will be imposed upon the small operations. Indeed, it has even been suggested in argument to this court that there is a conspiracy on the part of the larger opera-

---

3. For a history of small mines in Virginia leased out by Clinchfield Coal Company over the past forty years, see *Clinchfield Coal Co. v. District 28, UMWA,* 556 F.Supp. 522 (1983).

tors to drive some of the smaller operators out of business by utilization of the crackdown on the two-acre exemptions. While the court has some doubt about the accuracy of this allegation, perhaps it is a matter which should be more fully explored. The Secretary's definition of a two-acre mine could arbitrarily assure that no small mines would be eligible for the two-acre exemption even though they are operated in an environmentally sound manner.

### III. CONCLUSION

This court is of the opinion that the criteria for a temporary injunction have been satisfied in this case. While this opinion is written in only one case, there are several other suits which were heard at the same time on an issue of temporary injunction. The court will grant a temporary injunction in all the other cases insofar as the individual mines are concerned as there has been no showing of serious danger of environmental harm and there has also been a reasonable probability of prevailing on the merits on the part of the coal operators in those cases as well.

The court does not intend to enter a temporary injunction at this time enjoining the enforcement of the two-acre exemption against all "two-acre mines" in Virginia, as requested by the Virginia Surface Mine Association. The court is only enjoining OSM from entering cessation orders based upon the charge that an operation with a Chapter 23 permit must obtain a Chapter 19 permit. However, OSM is not enjoined from issuing cessation orders against operations which are causing serious harm to the environment. Should OSM issue such a cessation order, the court will hear the case individually to determine whether a serious threat to the environment is involved.

Therefore, the temporary injunction requested by the Commonwealth of Virginia and the Virginia Surface Mine Association will be denied. However, as to the temporary injunction requested by the Virginia Mining and Reclamation Association, the defendant will be enjoined from entering cessation orders based upon the charge that

an operation with a Chapter 23 permit must obtain a Chapter 19 permit and a temporary injunction will be entered on all the mines that have received cessation orders or which are the subject of suit at this time by OSM.