The PITTSTON COMPANY and
Clinchfield Coal Company,
Plaintiffs,

v.

Manuel LUJAN, Jr., Secretary of the
Interior and Commonwealth of
Virginia, Defendants.

Civ. A. No. 91–0006–A.

United States District Court,
W.D. Virginia,
Abingdon Division.

April 23, 1992.

Stephen M. Hodges, Abingdon, Va., John R. Woodrum, Washington, D.C., for plaintiffs.

Charles P. Gault, Dept. of Interior, Knoxville, Tenn., W. Michael Lepchitz, Asst. Atty. Gen., Big Stone Gap, Va., for defendants.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, Senior District Judge.

The Pittston Company and Clinchfield Coal Company ("Plaintiffs") initially brought this action seeking a temporary restraining order ("TRO"), preliminary injunction and permanent injunction. The court has previously entered orders granting the TRO and the preliminary injunction. Therefore, the permanent injunction is the only remaining issue. The matter is presently before the court on the motion of the Secretary of the Interior and the Commonwealth of Virginia ("Defendants") for summary judgment and Plaintiffs' motion for entry of a permanent injunction. The

Plaintiffs assert jurisdiction pursuant to 28 U.S.C. § 1331 and 30 U.S.C. § 1276(a)(1).

## FACTUAL AND PROCEDURAL BACKGROUND

The Pittston Company ("Pittston"), through its subsidiaries, is engaged in the business of mining coal in Virginia and other states. Clinchfield Coal Company ("Clinchfield") is an indirect wholly-owned subsidiary of Pittston operating in Virginia. Manuel Lujan, Jr. is Secretary of the United States Department of Interior ("Secretary"), which, through the Office of Surface Mining Reclamation and Enforcement ("OSM"), administers the Surface Mining Control and Reclamation Act of 1977 ("SMCRA"), 30 U.S.C. §§ 1201–1328, and promulgates regulations governing surface coal mining. The Commonwealth of Virginia, through its Department of Mines, Minerals and Energy ("DMME") and Division of Mine Land Reclamation ("DMLR"), obtained federal approval in 1981 as the primary regulatory authority and issuer of permits for surface coal mining in this state, with the Secretary, through OSM, retaining certain oversight authority.

Clinchfield is engaged in the business of mining, processing, and selling coal in Virginia. Clinchfield also hires independent contractors, known in the business as "contract miners," who mine for the company. The parties stipulated that, at certain times from the late 1970s to the mid–1980s, Golden Chip Coal, Inc., Fadco, Inc., Delight Coal Corporation, and Elkins Energy Company ("the Contractors") were contract miners for Clinchfield at locations in Southwest Virginia. During this time, Clinchfield owned or leased the coal being mined by the Contractors and, pursuant to contracts with them, had the right to receive the coal after mining. The Contractors were independently owned and operated and held

their own permits from OSM and DMLR to conduct surface coal mining.

On October 3, 1988, the Secretary adopted regulations, effective November 2, 1988, defining the term "owned or controlled" as used in the SMCRA, 30 U.S.C. § 1260(c) [1], and revising the scope of review of a permit applicant's environmental compliance record prior to issuance of new permits. 30 C.F.R. § 773.5, 773.15(b).[2] At the same time, OSM established the Applicant/Violator System ("AVS"), a computer system that identifies whether an applicant for a permit is linked by ownership or control to any person having outstanding violations of federal or state surface mining laws.

Annetta L. Cheek, Chief of OSM's Applicant/Violator System Office ("AVSO"), submitted an affidavit describing the procedure followed for evaluating permit applications under § 510(c) of SMCRA, 30 U.S.C. § 1260(c). Cheek stated that the primary resource available to regulatory authorities for evaluating permit applications is the AVS. When queried, the AVS makes a recommendation to issue, deny, or condition a permit based on whether the AVS discovers an ownership or control link between the applicant and an outstanding violation. Cheek stated that the states are not required to follow the AVS or AVSO recommendation; but under their respective memoranda of understanding with OSM, the states are required to consider any information they receive from the AVS or AVSO before issuing a permit. However, Bill Bledsoe from the DMME stated that his agency had never overridden an OSM block based on federal violations. (2/6/91 Tr. at 71). Following the February 6, 1991 hearing, the OSM and DMLR entered into an agreement which requires Virginia to participate in the AVS and to refuse permits to any person the AVS links to a violator unless (1) the ownership or

---

1. This section provides in part, "Where the schedule or other information available to the regulatory authority indicates that any surface coal mining operation owned or controlled by the applicant is currently in violation of [in] this chapter or other laws referred to [in] this subsection, the permit shall not be issued until the applicant submits proof that such violation has

been corrected or is in the process of being corrected...." 30 U.S.C. § 1260(c).

2. These regulations are presently the subject of judicial review in a pending suit in the District of Columbia. *National Wildlife Federation v. Lujan,* No. 88–3117 (D.D.C.) (consolidated).

control link has been shown to be erroneous or (2) the applicant proves that the violation has been, or is being, abated or is the subject of a good faith appeal. (Plaintiffs' Exhibit 4 at 5, filed 11/12/91).

Cheek stated that the ownership or control link is determined by using the standards set forth in 30 C.F.R. §§ 773.5, 773.-15(b)(1). The ownership and control information in the AVS comes from two sources: (1) information submitted in applications for surface mining permits pursuant to § 507 of SMCRA, 30 U.S.C. § 1257, and equivalent state requirements, and (2) information developed through research conducted by the AVSO's Lexington, Kentucky office. At present, violations in the AVS consist of state's reports of bond forfeitures, OSM's reports of unabated federal performance standard violations, unpaid federal civil penalties, and unpaid abandoned mine land fees.

Cheek's affidavit also addressed an applicant's access to information in the AVS and the applicant's opportunities to amend adverse information prior to the information being used to block permits. Cheek stated that, when the AVSO identifies a link to an unabated violation, the AVSO sends a letter, hereinafter referred to as the thirty-day letter, to the newly identified entity notifying the entity that the link has been discovered. The entity then has thirty days to submit material that may correct the violation information or rebut an ownership or control link to the outstanding violation. The entity may wish to contest the status of the violation or the ownership or control link. The "status" of the violation includes whether such violation has been corrected, is being corrected, or is the subject of a good faith appeal. The "ownership or control" link is reviewed under 30 C.F.R. §§ 773.5, 773.15(b)(1). However, the AVSO does not review the "validity" of federal or state violations. The validity of the violation refers to whether a violation existed at all or was the responsibility of the party cited.

If there is no response to the thirty-day letter, the AVSO will recommend denial of any pending or future permit. If the material submitted in response to the thirty-day letter is unpersuasive, the AVSO will respond by letter, hereinafter referred to as the ten-day letter, explaining why the AVSO continues to believe the link exists. OSM will provide the company with its documentation and suggest the type of documentation the company could submit to show that there is no link. The entity then has ten days to respond. If there is no response to the ten-day letter, the information is entered into the AVS. If a person responds to the ten-day letter, but does not rebut the link, the Director of the OSM ("Director") issues OSM's final decision notifying the entity that a link has been created. If the letters are persuasive, the information will not be used.

Corporations may appeal an adverse decision by the Director to the OSM's Office of Hearings and Appeals, Interior Board of Land Appeals as provided by 43 C.F.R. §§ 4.1280 to 4.1286. An adverse ruling by this body may be appealed to the appropriate federal district court pursuant to 5 U.S.C. §§ 702, 704.

Separately from the thirty-day letter process, the AVSO sends applicants, for whom it recommends granting a permit, a list of known ownership and control relationships involving the applicant. The applicant may then advise the AVSO of any erroneous information in the "organizational family tree," thus preventing any possible erroneous thirty-day letters.

Independent of the thirty-day letter process, individuals may obtain information relating to them in the AVS by submitting a request under the Privacy Act, 43 C.F.R. § 2.63. The applicant can also submit a request under the Freedom of Information Act, 43 C.F.R. § 2.14.

An individual or entity may at any time seek to amend information contained in the AVS prior to filing an application. If the individual or entity submits information that rebuts a presumed ownership or control link, the link is removed from the AVS. However, if the OSM remains convinced that the link exists, the Director issues a written decision and the link will remain.

Administrative and judicial review can be had as previously described.

Even if an individual or entity has not taken advantage of the opportunities to contest the accuracy of the information prior to filing an application, an applicant has opportunities for administrative review during the application review process. If the regulatory authority [3] accepts an AVSO recommendation to deny an application, the regulatory authority notifies the applicant and refers the applicant to the state or federal agency with jurisdiction over the violation linked to the applicant. The applicant may submit to the regulatory authority a response to an adverse recommendation of the AVSO. Such a response may attempt to refute the facts or rebut the presumptions underlying the ownership or control link. The regulatory authority must issue a decision on the permit application within a reasonable time pursuant to 30 U.S.C. § 1264(b) or equivalent state law.

After a permit is denied, an applicant may challenge any basis for a denial, including the status or validity of an outstanding violation or the ownership or control link to an unabated violation. SMCRA and its implementing regulations establish procedures for review of decisions on permit applications. 30 U.S.C. § 1264. When OSM is the regulatory authority, a decision denying an application for a surface coal mining permit may be appealed to the Department's Office of Hearings and Appeals, Hearing Division pursuant to 43 C.F.R. §§ 4.1360–4.1388. An adverse decision of the Hearings Division may be appealed to the Interior Board of Land Appeals pursuant to 43 C.F.R. §§ 4.1369, 4.1378, and 4.1388. A decision by the Interior Board of Land Appeals is subject to judicial review pursuant to 30 U.S.C. § 1276. Alternatively, if the Hearings Division upholds OSM's decision to deny a new surface mining permit, the applicant may bypass the Interior Board of Land Appeals and seek judicial review of the Hearing Division's decision pursuant to 30 U.S.C. § 1276(a)(2) and 43 C.F.R. § 4.1369(a). State regulatory programs also contain administrative and judicial review procedures.

Turning to the present case, the evidence shows that on December 14, 1990, OSM sent a thirty-day letter to Coal Energy, Inc., Fadco Inc. and to the individuals and entities, including Clinchfield, found to be owners or controllers. (Exhibit C & D, Defendants' Memorandum in Support of Summary Judgment [hereinafter S.J. Memorandum]). By letter dated December 20, 1990, OSM advised Pittston that it had reason to believe that Pittston, through Clinchfield, controlled the Contractors as that term is defined in 30 C.F.R. § 773.-5(b)(6).[4] OSM stated that the Contractors had outstanding violations of SMCRA [5] and that the Contractors were blocked from obtaining permits pursuant to 30 C.F.R. 773.15(b).[6] OSM advised that once the information in the AVS was updated to reflect this control, Pittston would also be blocked from obtaining permits unless (1) each violation to which Pittston was linked had been abated to the satisfaction of the agency having jurisdiction over such viola-

---

3. The applicable state regulatory authority makes the permitting decisions in the twenty-three states that, like Virginia, have approved regulatory programs. OSM is the regulatory authority in the other coal producing states.

4. The regulations provide that the following relationship is presumed to constitute ownership or control:

Owning or controlling coal to be mined by another person under a lease, sublease or other contract and having the right to receive such coal after mining or having the authority to determine the manner in which that person or another person conducts a surface coal mining operation.

30 C.F.R. § 773.5(b)(6).

5. The parties stipulated that, "Plaintiffs were not named in the underlying notices or orders nor did they receive notice from the defendants concerning the underlying proceedings against the Contractors giving rise to the fines and penalties in question, and plaintiffs were not parties to and did not participate in those proceedings."

6. This regulation states that "the regulatory authority shall not issue the permit if any surface coal mining and reclamation operation owned or controlled by either the applicant or by any person who owns or controls the applicant is currently in violation of the Act or any other law, rule or regulation referred to in this paragraph." 30 C.F.R. § 773.15(b)(1).

tion, (2) an agreement to resolve such violation had been entered into and was being implemented, or (3) OSM's determination of ownership and control had been successfully rebutted.

OSM advised Pittston that if it wished to rebut OSM's ownership and control finding, before a final determination was made, or if Pittston wished to enter into an abatement agreement with respect to the Contractors, Pittston should contact the OSM. Otherwise, if Pittston did not respond by January 18, 1991, the AVS system would be updated using the information obtained in OSM's investigation. By agreement of the parties, the deadline was extended to January 25, 1991. As of the filing of the lawsuit, OSM had not made a final determination of a control linkage between Plaintiffs and the Contractors. Accordingly, OSM had not entered the link into the AVS. (2/6/91 Tr. at 41).

On January 18, 1991, Plaintiffs filed their complaint in this action. Plaintiffs alleged that, if the OSM blocked their permit applications for the reasons stated in the December 20, 1990 letter, their procedural due process rights would be violated because "plaintiffs were not parties to the prior actions against the contractors and did not have proper notice of or an opportunity to contest either the underlying violations or the penalties assessed therefor." (Complaint at ¶ 12). Plaintiffs sought a TRO, a preliminary injunction, and a permanent injunction enjoining Defendants from: (1) blocking Plaintiffs or their associates or affiliates from obtaining surface mining permits based on violations or other liabilities of the Contractors or any other contractor of Plaintiffs; (2) refusing to renew or rescinding existing permits of Plaintiffs or their associates or affiliates on account of violations or other liabilities of any such contractors; and (3) from otherwise linking Plaintiffs or their associates or affiliates with any violations or other liabilities of any such contractor.

On January 23, 1991, this court issued a TRO as requested by Plaintiffs. On February 5, 1991, Defendants moved the court to dismiss the case pursuant to Fed.R.Civ.P.

12(b) and (c) for lack of subject matter jurisdiction. On February 6, 1991, the court held a hearing on Plaintiffs' motion for preliminary injunction. On February 8, 1991, this court issued a preliminary injunction as requested by Plaintiffs. The court based jurisdiction on 28 U.S.C. § 1331. The court stated that, because Plaintiffs had not challenged any national rules or regulations, the court was not ruling upon any such rule or regulation, and the merits of any such rule or regulation were not before the court, the action need not be brought in the District of Columbia pursuant to 30 U.S.C. § 1276(a)(1) as Defendants alleged. This preliminary injunction was limited to permit blocking due to violations of only the Contractors rather than the broader injunction sought by Plaintiffs.

On April 5, 1991, Defendants filed a notice of appeal of the February 8, 1991 order. On August 13, 1991, the Fourth Circuit granted Defendants' motion for a voluntary dismissal of the appeal without prejudice.

On November 7, 1991, Plaintiffs submitted a proposed final order which would permanently enjoin the Secretary from recommending denial of permits based on outstanding violations by the Contractors "or any other contractor of plaintiffs or their affiliates ... until such time as defendants have given plaintiffs a due process hearing with notice of the offense and a final, independent determination as to the existence and validity of the underlying violations...." (Plaintiff's Proposed Final Order at 9–10). On November 27, 1991, Defendants moved for summary judgment alleging: (1) this court is without jurisdiction in this case because it presents an indirect challenge to the Secretary's national rules or regulations which can be brought only in the United States District Court for the District of Columbia pursuant to 30 U.S.C. § 1276(a)(1); (2) the administrative appeal procedures available to Plaintiffs afford the requisite procedural due process; and (3) Plaintiffs have failed to exhaust all administrative remedies prior to initiating this judicial action.

On January 17, 1992, while the court was awaiting final briefing by the parties, Plaintiffs filed a motion to expand the preliminary injunction based upon additional actions taken by Defendants and their agents. The court held an evidentiary hearing on January 22, 1992. At that time, the court did not expand the preliminary injunction. On February 4, 1992, Plaintiffs filed a renewal of their motion to expand the preliminary injunction. The court held an evidentiary hearing on February 10, 1992.

In their motions to expand the preliminary injunction, Plaintiffs alleged that OSM, by letter dated January 24, 1992, claimed that Pittston or its subsidiaries owed certain delinquent abandoned mine land ("AML") fees for Ranger Fuel Corporation and North Star Coal Company ("North Star"). The letter warned that failure to pay these fees could result in a total ban on further mining permits in any state. The evidence showed that Ranger Fuel, a subsidiary of Pittston, was the permitee and had allowed North Star to mine on its permits in West Virginia. Plaintiffs asked that the injunction be expanded to embrace other operations of the OSM in West Virginia and Kentucky as well as in Virginia until OSM has given them a hearing to determine their responsibility for the AML fees. In a Memorandum Opinion and Order entered February 24, 1992, this court expanded the preliminary injunction as Plaintiffs requested.

## ANALYSIS

### I. *Jurisdiction*

■ The initial issue is whether this court has jurisdiction over this action. Defendants assert that Plaintiffs' action is necessarily a challenge to OSM's ownership and control regulations at 30 C.F.R. §§ 773.5(b)(6) and 773.15(b)(1). (S.J. Memorandum at 11). As such, it can be brought only in the United States District Court for the District of Columbia Circuit. 30 U.S.C. § 1276(a)(1). According to Defendants, Plaintiffs do not contest ownership or control of the Contractors as defined in 30 C.F.R. § 773.5(b)(6). Therefore, under 30

C.F.R. § 773.15(b)(1), if the Contractors have outstanding violations "the regulatory authority *shall not* issue the permit." (emphasis added). Yet, despite the mandate of the regulations, the Plaintiffs ask that OSM be enjoined from blocking the permits on due process grounds. Defendants allege that this attack on OSM's administrative action, taken in accordance with the Secretary's regulations, constitutes an indirect challenge to the regulations themselves which the Fourth Circuit has held cannot be brought in this district. *See Commonwealth of Virginia v. Watt*, 741 F.2d 37, 40 (4th Cir.1984).

On the other hand, Plaintiffs assert that this case presents a federal question under 28 U.S.C. § 1331. "The federal question presented is whether it is a violation of due process for the government to block the issuance of mining permits to the plaintiffs on the basis of fines and penalties incurred by contractors in prior proceedings where plaintiffs were not parties ... and did not have proper notice or opportunity to be heard." (Plaintiffs' Memorandum in Support of Permanent Injunction at 13 [hereinafter P.I. Memorandum]). Plaintiffs assert that this court's exercise of jurisdiction would not contravene 30 U.S.C. § 1276(a)(1). Plaintiffs allege that they do not question the authority of the Secretary to promulgate a rule which defines "ownership or control," nor do they attack the merits of the rule which has been promulgated. Rather, Plaintiffs assert that the question whether the Secretary's application of the regulation violates the Plaintiffs' procedural due process is subject to judicial review in this district under 30 U.S.C. § 1276(a)(1). *See B & M Coal Corp. v. Office of Surface Mining Reclamation and Enforcement*, 531 F.Supp. 677, 680 (S.D.Ind.1982), *aff'd*, 699 F.2d 381 (7th Cir. 1983).

30 U.S.C. § 1276(a)(1) provides:

Any action of the Secretary to approve or disapprove a State program or to prepare or promulgate a Federal program pursuant to this chapter shall be subject to judicial review by the United States District Court for the District which in-

cludes the capital of the State whose program is at issue. *Any action by the Secretary promulgating national rules or regulations including standards pursuant to sections 1251, 1265, 1266, and 1273 of this title shall be subject to judicial review in the United States District Court for the District of Columbia Circuit.* Any other action constituting rulemaking by the Secretary shall be subject to judicial review only by the United States District Court for the district in which the surface coal mining operation is located. Any action subject to judicial review under this subsection shall be affirmed unless the court concludes that such action is arbitrary capricious or otherwise inconsistent with law. A petition for review of any action subject to judicial review under this subsection shall be filed in the appropriate Court within sixty days from the date of such action, or after such date if the petition is based solely on grounds arising after the sixtieth day. Any such petition may be made by any person who participated in the administrative proceedings and who is aggrieved by the action of the Secretary.

30 U.S.C. § 1276(a)(1) (emphasis added).

Three Fourth Circuit opinions have addressed jurisdiction under 30 U.S.C. § 1276(a)(1). *Clinchfield Coal Co. v. DOI,* 802 F.2d 102 (4th Cir.1986); *Commonwealth of Virginia v. Watt,* 741 F.2d 37 (4th Cir.1984); and *Tug Valley Recovery Center v. Watt,* 703 F.2d 796 (4th Cir.1983). In *Tug Valley,* an environmental group brought an action against the Secretary alleging: (1) the Secretary acted in violation of § 503 of SMCRA and 30 C.F.R. § 705.5 by approving a state environmental regulatory program that included, contrary to the SMRCA's conflict of interest provision found at § 517(g), 30 U.S.C. § 1267(g), an appeal review board composed of individuals with interests in coal mining; (2) the Secretary's approval of this portion of the state program violated the due process clause of the Fifth Amendment by establishing a system with inherent conflicts of interests; and (3) that certain state defendants, by implementing the regulatory pro-

gram, denied plaintiffs their Fourteenth Amendment procedural due process rights by relegating them to an appeal before a biased review board. *Id.* at 799.

The district court dismissed the case for lack of subject matter jurisdiction under 30 U.S.C. § 1276(a)(1). The court characterized the plaintiff's claim as an attack on 30 C.F.R. § 705.5 inasmuch as the regulation exempted advisory board members representing multiple interests from the conflict of interest provisions in 30 U.S.C. § 1267(g). The court then dismissed the entire case without addressing the constitutional claims. *Id.* at 799.

On appeal, the Fourth Circuit found that the district court lacked jurisdiction over the plaintiff's first claim, which amounted to an attack on the regulations. The court stated:

> Tug Valley simply has no statutory ground for complaint under the existing regulatory scheme. Its challenge to the Secretary's approval of the [review board]—approval which was entirely consistent with section 517(g) of the Act as elaborated under 30 C.F.R. § 705.5—can only be construed as an attack on § 705.5 itself. Therefore, the district court's dismissal of Tug Valley's statutory claim for lack of subject matter jurisdiction was proper.

*Id.* at 800. However, the court then proceeded to examine the plaintiff's remaining constitutional claims. The court ultimately dismissed the claims, not for lack of jurisdiction, but because the constitutional claims failed to state a constitutional violation. *Id.* at 801.

In *Commonwealth of Virginia v. Watt,* the Secretary adopted Virginia's state regulatory plan, subject to its compliance with a federal exemption for mining operations which affect less than two acres. *Commonwealth of Virginia,* 741 F.2d at 38. Subsequently, Virginia adopted Chapter 23, Va.Code Ann. § 45.1–362 to –380 (1982) entitled "Surface Mining of Coal for Operations Disturbing Two Surface Acres or Less." The Secretary alleged that Chapter 23 failed to include certain provisions of the federal regulations found at 30 C.F.R.

§§ 700.11 and 701.5 and allowed coal operators to avoid federal regulation of their mines. *Id.* at 38–39. Therefore, the Secretary began enforcement actions, including the issuance of cessation orders, to require compliance with the federal law and regulations governing the two-acre exemption. Plaintiffs sought an injunction claiming that "the Secretary was precluded from applying the two-acre criteria contained in the federal regulations and in Virginia's approved state program, because plaintiff's coal mines were in compliance with Chapter 23." *Id.* at 39.

The district court issued a temporary injunction prohibiting the OSM from issuing cessation orders at certain surface mining and reclamation operations in Virginia. *Id.* at 38. In deciding whether jurisdiction was proper, the district court framed the plaintiffs' argument as follows:

> The plaintiffs allege that the manner in which this cessation order was presented was a denial of due process in that the defendant denied plaintiff an opportunity for an administrative hearing to contest the cessation order and that the defendant does not intend to provide the plaintiff with other relief provided by the Act.... Accordingly, the plaintiff seeks a review of 30 C.F.R. § 700.11 alleging that the application of this regulation in effect denies his right of due process.

*Jaward Corp. v. Watt,* 564 F.Supp. 797, 799 (W.D.Va.1983), *rev'd sub nom. Commonwealth of Virginia v. Watt,* 741 F.2d 37 (4th Cir.1984).

The district court found that plaintiff "does not challenge the Department's rulemaking; rather, it questions whether its procedural due process guarantees have been violated by the Secretary's application of the Act or the implementing regulations." *Id.* (quoting *B & M Coal v. OSM,* 531 F.Supp. 677, 680 (S.D.Ind.1982), *aff'd,* 699 F.2d 381 (7th Cir.1983)). Therefore, the district court found that it had jurisdiction under 30 U.S.C. § 1276(a)(1) to "hear procedural due process violations as a result of the Secretary's application of the Act." *Id.*

However, the Fourth Circuit reversed. The court stated that "a district court in this Circuit lacks subject-matter jurisdiction over any action which is tantamount to an attack on a federal regulation" and "even an indirect attack on a federal regulation, could be brought only in the district court for the District of Columbia." *Commonwealth of Virginia,* 741 F.2d at 40 (citing *Tug Valley Recovery Center v. Watt,* 703 F.2d 796 (4th Cir.1983)). The Fourth Circuit stated:

> We find that our decision in *Tug Valley* governs the instant litigation and are unpersuaded by appellees' arguments and the district court's conclusions to the contrary. Focusing on the fact that the complaints challenged the secretary's cessation orders on due process grounds, the district court reasoned that it had jurisdiction to review plaintiffs' procedural due process claims under that portion of 30 U.S.C. § 1276(a)(1) which provides that "[a]ny other action constituting rulemaking by the Secretary shall be subject to judicial review only by the United States District Court for the district in which the surface coal mining operation is located." *Jaward Corporation v. Watt,* 564 F.Supp. at 799. In spite of this conclusion, however, the district court examined the merits of the federal two-acre regulations in addressing the likelihood-of-success criteria for preliminary relief under 30 U.S.C. § 1276(c). Furthermore, the remedy fashioned by the district court is not directed at the Secretary's enforcement procedures, but instead prohibits any implementation of the federal two-acre regulations. Thus, the analysis employed by the district court inevitably leads back to our decision in *Tug Valley* that attacks on administrative action, taken in accordance with the Secretary's regulations, amounts to attacks on the regulations themselves, and may not be heard in this Circuit.

*Id.* The court also stated, "Nor do we accept the rationale that federal question jurisdiction can be invoked to avoid the forum for judicial review made available by Congress to challenge national mining regulations." *Id.*

In *Clinchfield Coal Co. v. DOI,* the district court enjoined the Secretary from enforcing a notice of violation pursuant to SMCRA. *Clinchfield Coal Co.,* 802 F.2d at 103. In granting the injunction, the district court found that the Secretary's national regulation exceeded the Secretary's statutory authority. *Id.* In deciding whether the district court had jurisdiction the Fourth Circuit stated:

> In *Commonwealth of Virginia v. Watt,* 741 F.Supp. 37 (4th Cir.1984), we found that an attack on administrative action taken in accordance with the Secretary of Interior's regulations under SMCRA was an attack on the regulations themselves and may be heard only in the U.S. District Court for the District of Columbia. In *Tug Valley Recovery Center v. Watt,* 703 F.2d 796 (4th Cir.1983), we concluded that a district court in the Fourth Circuit lacked subject-matter jurisdiction over any action that was tantamount to an attack on a federal regulation issued under SMCRA.

> [T]he district court found that the regulation ... was void because it went beyond the scope of authority granted to [OMS]. Since this represents an attack upon the regulation, the U.S. District Court for the Western District of Virginia did not have jurisdiction to consider this point or to make this finding. Such district court does have jurisdiction to consider the temporary relief sought by Clinchfield Coal Company in this matter, so long as it does not take into consideration the merits of the federal regulations in addressing the likelihood-of-success for preliminary relief under 30 U.S.C. § 1276(c).

*Id.* at 103–04.

In the present case, the court finds the decision in *Commonwealth of Virginia* to be controlling and grants Defendants' motion to dismiss. This court has held that it does not have jurisdiction to hear a claim that a federal regulation is invalid. *Patrick Coal Co. v. Office of Surface Mining Reclamation and Enforcement,* 661 F.Supp. 380, 383 (W.D.Va.1987). The Fourth Circuit has stated that a district court in this circuit lacks jurisdiction over a claim "which constituted even an indirect attack on a federal regulation." *Commonwealth of Virginia,* 741 F.2d at 40. Specifically, the Fourth Circuit has stated "attacks on administrative action taken in accordance with the Secretary's regulations amount to attacks on the regulations themselves, and may not be heard in this circuit." *Id.*

■ Plaintiffs are not challenging OSM's interpretation of the regulations. Indeed, the parties have stipulated that Plaintiffs owned or controlled the Contractors as that term is defined in the regulations at 30 C.F.R. § 773.5(b)(6). Rather, Plaintiffs assert that the regulations are silent on whether Plaintiffs are entitled to a pre-denial hearing on the underlying violations. (Plaintiffs' Proposed Final Order at 7). Thus, they assert, this action is not a challenge to the regulations. However, this argument is erroneous for two reasons. First, 30 C.F.R. § 773.15(b) governs the review of violations of permit applicants or of operations owned or controlled by the applicant. This regulation provides that, if the Contractors have outstanding violations, the regulatory authority *"shall not"* issue a permit. 30 C.F.R. § 773.15(b)(1) (emphasis added). This language is mandatory rather than permissive. Second, this regulation does provide for a pre-denial hearing, but only when the regulatory authority makes a determination that the permit applicant owns or controls an operation with a demonstrated pattern of willful violations. 30 C.F.R. § 773.15(b)(3).

Accordingly, the administrative action of recommending denial of the permits without a pre-denial hearing on the issue of the validity of the underlying violations is taken in accordance with the plain language of the regulations. Under Fourth Circuit precedence, any attack on this action is tantamount to an attack on the regulations themselves which can be brought only in the District of Columbia. This result cannot be avoided by framing the question in terms of due process and asserting jurisdiction under 28 U.S.C. § 1331. *Commonwealth of Virginia,* 741 F.2d at 40.

Plaintiffs correctly note that the court in *Tug Valley* considered the plaintiff's constitutional claims. However, although the court in *Tug Valley* considered the constitutional issues raised by plaintiff, the Fourth Circuit, in the two subsequent decisions, cited the case for only the principle that a district court lacks jurisdiction over a claim that is tantamount to an attack on the regulations. *Commonwealth of Virginia*, 741 F.2d at 40; *Clinchfield*, 802 F.2d at 103. If *Tug Valley* stood for the principle that this court has jurisdiction over constitutional challenges to the application of regulations, the Fourth Circuit would not have reversed this court's decision in *Jaward Corporation v. Watt*, 564 F.Supp. 797 (W.D.Va.1983). Having been reversed once, this court declines Plaintiffs' invitation for a second opportunity.

■ Plaintiffs also assert that the district court in *Commonwealth of Virginia* was reversed only because the district court examined the merits of the federal regulation. *See Commonwealth of Virginia*, 741 F.2d at 40. However, as stated above, this was not the extent of the Fourth Circuit's rationale. Also, Plaintiffs ignore the court's statement that federal question jurisdiction cannot be invoked to avoid 30 U.S.C. § 1276(a)(1). To do so would create conflicts among various district courts concerning the validity of the federal regulations and would impair or prevent the establishment of nationally uniform minimum standards. *Id.* at 41.

Plaintiffs assert that their position is supported by the statement in *Clinchfield* that "district court does have jurisdiction ... so long as it does not take into consideration the merits of the federal regulation." *Clinchfield*, 802 F.2d at 103–04. However, in *Clinchfield*, the district court was not addressing constitutional claims. *Clinchfield Coal Co. v. Hodel*, 640 F.Supp. 334 (W.D.Va.1985), *rev'd sub nom. Clinchfield Coal Co. v. DOI*, 802 F.2d 102 (4th Cir.1986). The above statement means only that a district court can hear challenges to an interpretation placed on a regulation, but not challenges to the regulation itself. *See United States v. S.S. (Joe)*

*Burford, Inc.,* 761 F.2d 173, 174–75 (4th Cir.1985) (court had jurisdiction to interpret SMCRA where it was conceded that validity of regulation was not questioned). Plaintiffs' claim falls into this latter category and cannot be heard in this circuit.

Finally, Plaintiffs assert that the District Court for the District of Columbia "expressly rejects" jurisdiction over challenges to the constitutionality of a regulation as applied. *In re Surface Mining Regulation Litigation*, 456 F.Supp. 1301, 1307 (D.C. 1978), *rev'd in part, aff'd in part*, 627 F.2d 1346 (D.C.Cir.1980). Plaintiffs have misconstrued that decision. There, the court stated that "[r]eview of application of the regulations is limited by statute to the district court for the district 'in which the surface coal mining operation is located'" *Id.* This does not support Plaintiffs' position. Plaintiffs do not assert that OSM is misapplying the rules. Instead, Plaintiffs claim that, even though the rules are correctly applied, that application results in a violation of procedural due process. As previously stated, the Fourth Circuit rejected such an argument in *Commonwealth of Virginia*.

Accordingly, the court finds that this action cannot be brought in this forum. Therefore, the court grants Defendants' motion for summary judgment.

### Conclusion

For the foregoing reasons, the court grants Defendants' motion to dismiss for lack of subject matter jurisdiction. The court hereby denies Plaintiffs' motion for entry of a permanent injunction. The court will not enter a final order until Plaintiffs advise whether they desire this case be transferred to the United States District Court for the District of Columbia.