**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ARCH MINERAL CORPORATION, a
Delaware corporation,
<u>Plaintiff-Appellee,</u>

v.

BRUCE BABBITT, SECRETARY, UNITED

No. 95-2793

STATES DEPARTMENT OF THE INTERIOR;
ROBERT URAM, Director, Office of
Surface Mining Reclamation and
Enforcement, United States
Department of the Interior,
<u>Defendants-Appellants.</u>

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
Charles H. Haden II, Chief District Judge.
(CA-95-32-2)

Argued: September 27, 1996

Decided: January 16, 1997

Before ERVIN and HAMILTON, Circuit Judges, and SPENCER,
United States District Judge for the Eastern District of Virginia,
sitting by designation.

_____

Affirmed by published opinion. Judge Ervin wrote the opinion, in
which Judge Hamilton and Judge Spencer joined.

_____

**COUNSEL**

**ARGUED:** John Thompson Stahr, Environment and Natural
Resources Division, UNITED STATES DEPARTMENT OF JUS-

TICE, Washington, D.C., for Appellants. Michael Bruce Victorson, ROBINSON & MCELWEE, Charleston, West Virginia, for Appellee. **ON BRIEF:** Lois J. Schiffer, Assistant Attorney General, Martin W. Matzen, Richard M. Hall, Environment and Natural Resources Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Richard N. McNeer, Steven C. Barcley, Office of the Solicitor, UNITED STATES DEPARTMENT OF THE INTERIOR, Washington, D.C., for Appellants. Christopher B. Power, ROBINSON & MCELWEE, Charleston, West Virginia; Blair M. Gardner, Senior Counsel, ARCH MINERAL CORPORATION, St. Louis, Missouri, for Appellee.

_____

## OPINION

ERVIN, Circuit Judge:

Bruce M. Babbitt, Secretary of the Interior, United States Department of the Interior, appeals from a decision of the United States District Court for the Southern District of West Virginia granting summary judgment in favor of Arch Mineral Corporation and granting the company's motion for a permanent injunction. For the reasons hereinafter explored, we affirm.

I.

This case arises from an attempt by the Interior Department's Office of Surface Mining Reclamation and Enforcement ("OSM") to impose penalties upon Arch Mineral Corporation ("Arch") under the OSM's ownership and control rule, 30 C.F.R. § 773.5 (1995). OSM is responsible for issuing the permits necessary for mining companies to operate at particular sites. Pursuant to the Surface Mining Control and Reclamation Act (SMCRA), when a permit applicant owns or controls a company in violation of OSM rules, that applicant can be "permit-blocked" until the violations are corrected or are being corrected. Greendale Coals, Inc. ("Greendale") owes delinquent abandoned mine reclamation ("AML") fees and penalties to OSM. OSM alleges that Arch should be considered an owner or controller of Greendale Coals, Inc. because Greendale entered into a lease agree-

2

ment with a subsidiary of Diamond Shamrock Coal Company ("Diamond Shamrock") which was subsequently purchased by Arch.

After receiving letters from OSM declaring a presumed link of ownership and control between Arch and Greendale, Arch filed this action for declaratory and injunctive relief to preclude OSM from making this link. On August 1, 1995, the district court granted summary judgment in favor of Arch and entered a permanent injunction "prohibiting OSM from linking Arch to Greendale under the ownership and control rule." Arch Mineral Corp. v. Babbitt, 894 F. Supp. 974, 988 (S.D. W.Va. 1995).

II.

Greendale mined coal in West Virginia until its dissolution in 1987 under permits issued by that state's OSM-approved regulatory program. Much of the coal was mined under a mineral lease with Clay-Nicholas Minerals Company, a subsidiary of Diamond Shamrock. This lease was entered into on September 6, 1983. Greendale also entered into a contract known as a "coal sales agency agreement" with Diamond Shamrock Coal Sales Company ("Diamond Shamrock Sales"), another subsidiary of Diamond Shamrock, giving Diamond Shamrock the right to sell coal from the Greendale operation. This agency contract was terminated on December 12, 1985.

Greendale became financially unstable in the early 1980's and failed to pay $58,000.00 in AML fees it owed OSM. OSM issued a cessation order to Greendale and, when the fees were not paid after 30 days, OSM imposed penalties of $22,000.00. When the penalties and fees remained unpaid, OSM brought a civil action in district court and received a judgment for the funds on November 18, 1986. OSM neither joined Diamond Shamrock as a defendant nor filed suit against that company to collect the money.

Greendale filed for bankruptcy on February 27, 1987, and was dissolved under state law. OSM filed a proof of claim for the uncollected funds but received no money from the bankruptcy estate. Again, OSM did not attempt to collect the delinquent fees or penalties from Diamond Shamrock.

3

On April 17, 1987, Arch purchased the outstanding stock of Diamond Shamrock. At that time, Diamond Shamrock Sales and Clay-Nicholas Minerals Company were still wholly-owned subsidiaries of Diamond Shamrock. The parties stipulate that Arch had no interest in these companies prior to this transaction, and that OSM had notice of the acquisition by October 1987. Diamond Shamrock's name was changed to Arch Mineral Coal Company and it was dissolved in June 1988. There is no evidence in the record to indicate that Arch knew that OSM would attempt to hold it responsible for Greendale's violations until Arch received notification from OSM on May 21, 1993.

On October 3, 1988, OSM promulgated its regulations defining "ownership and control." See 53 Fed. Reg. 38877 (Oct. 3, 1988). This regulation determined when a person could be linked to a violator and thus "permit-blocked" from obtaining new mining permits or having currently issued permits revoked.

In a May 1993 letter, OSM notified Arch that it was presumed to be linked to Greendale through the ownership and control regulation, 30 C.F.R. § 773.5(b)(6). The agency explained in a September 30, 1994 letter that Arch was linked because Diamond Shamrock both controlled the coal which Greendale mined, as lessor of the mineral interest, and had a right to receive the coal pursuant to the agency agreement, both of which are prerequisites to an assertion of control under the ownership and control rule. Id.

After OSM's initial correspondence with Arch concerning the link, Arch responded with information to rebut the presumption of ownership and control. In its September 30, 1994, reply, OSM stated that the presumption had not been rebutted and that if no response was received within 30 days, Arch would be entered into the Applicant/Violator System ("AVS"). Arch wrote again to OSM on October 18, 1994, further attempting to refute its link to Greendale. On January 13, 1995, Arch filed this action.

III.

SMCRA was enacted in 1977, and Title II of the Act created OSM within the Department of the Interior to administer and enforce the Act. See 30 U.S.C. § 1211(c). Title V sets out the enforcement provi-

4

sions to be used by OSM. No entity is allowed to enter into surface mining operations without first obtaining a permit from OSM. Id. at § 1256. If any entity is in violation of SMCRA, and if remedial measures are not taken after the entity is notified of the violation by OSM, OSM will order the operations to cease. Id. at § 1271(a). Penalties are then assessed against the party for continuing the violation. Id. at § 1268(h).

SMCRA requires that permit applications contain information about the applicant's corporate structure, those entities controlled by or under common control with the applicant, the holders of interests in the property to be mined, and the mining operator (if different from the applicant). SMCRA § 507(b), 30 U.S.C.§ 1257(b). In addition, § 510(c) of SMCRA requires that applicants file a schedule listing all notices of violation of SMCRA, and the final resolution of each such notice. 30 U.S.C. § 1260(c). Where that schedule, or other information, indicates that any surface mining operation"owned or controlled by the applicant" is currently in violation of SMCRA, the permit shall not be issued until the applicant submits proof that the violation has been or is being corrected. Id. Further, where OSM or a state regulatory authority determines that an existing permit was improvidently issued because of an unabated violation, that authority may impose permit conditions to abate the violation, or may suspend or rescind the permit. See 30 C.F.R. § 773.20(a), (c) (1995).

The ownership and control rule, 30 C.F.R. § 773.5(b)(6), is the primary language at issue in this case and is used by OSM to establish a link between Arch and Greendale. The rule reads as follows:

> (b) The following relationships are presumed to constitute ownership or control unless a person can demonstrate that the person subject to the presumption does not in fact have authority directly or indirectly to determine the manner in which the relevant surface coal mining operation is conducted:
>
> . . .
>
> (6) Owning or controlling coal to be mined by another person under a lease, sublease or other contract and having

5

the right to receive such coal after mining or having authority to determine the manner in which that person or another person conducts a surface coal mining operation.

30 C.F.R. § 773.5(b)(6).

OSM has set up a computer network to "identify ownership and control links involving permit applicants, permittees, and persons cited in violation notices." 30 C.F.R. § 773.5 (1995). This system is known as the AVS. OSM enters ownership or control links into the AVS, and this information bank is then used to evaluate permit applications or review whether current permits were improvidently issued. If linked on the AVS, an entity is said to be permit-blocked.

IV.

OSM challenges the jurisdiction of the district court over Arch's claims. We are not persuaded by the agency's arguments and find that the district court acted properly in exercising jurisdiction. Since we find below that the statute of limitations, 28 U.S.C. § 2462, bars OSM's enforcement actions, we need only consider whether the district court possessed subject matter jurisdiction to evaluate the merit of Arch's statute of limitations defense.

OSM argues that the federal district court of West Virginia lacked subject matter jurisdiction to consider whether its actions against Arch are time-barred. The agency asserts that this case could only have been brought in the United States District Court for the District of Columbia because it constitutes an attack on the Secretary's promulgation of national rules. SMCRA § 526(a), 30 U.S.C. § 1276(a)(1).

Arch does not contest OSM's argument that attacks on SMCRA regulations are within the exclusive jurisdiction of the United States District Court for the District of Columbia under SMCRA § 526(a), 30 U.S.C. § 1276(a). Rather, Arch argues that its challenge is not to the rule itself, but to the application of the rule, and therefore any federal district court may exercise jurisdiction if it is otherwise competent. Arch specifically maintains that, by asserting the statute of

6

limitations as an affirmative defense to the agency's action, it was thereby accepting the regulations as valid and only asserting that sufficient time had lapsed so that the rule did not apply to Arch.

We agree that, in the instant case, Arch is not attacking the regulations themselves, but their application to Arch. The authority relied upon by OSM to support its argument to the contrary is unpersuasive.

In Tug Valley Recovery Ctr. v. Watt, 703 F.2d 796 (4th Cir. 1983), an environmental group challenged OSM's approval of a state regulatory program review board which allowed persons having financial interests in mining operations to be members. Id. at 797-798. In Tug Valley, we held that the district court in West Virginia properly dismissed the action for lack of jurisdiction because the applicable regulation specifically allowed states to appoint multiple-interest boards such as the one whose makeup Tug Valley was contesting. Id. at 800. Given this fact, Tug Valley was limited to arguing for a change in the regulation, that argument being a direct attack to the promulgation of the SMCRA rule itself and only appropriate before the United States District Court for the District of Columbia. See 30 U.S.C. § 1276(a)(1).

OSM further relies upon Virginia v. Watt, 741 F.2d. 37 (4th Cir. 1984). In Watt, the Commonwealth of Virginia and coal miners filed actions challenging cessation orders issued by OSM against coal operators. The OSM took this enforcement measure because plaintiff miners had proceeded with operations based on their belief that certain coal mines, pursuant to newly enacted Virginia law, were exempt from SMCRA permitting requirements. Id. at 39. We found that the plaintiffs' suit constituted "attacks on administrative action, taken in accordance with the Secretary of the Interior's regulations . . . [which] may not be heard in this Circuit." Id. at 40 (citing Tug Valley, 703 F.2d at 769). Again, only the District of Columbia federal district court had jurisdiction.

Finally, in Pittston Coal Company v. Babbitt, 66 F.3d 714 (4th Cir. 1995), cert. denied, 116 S.Ct 1417 (1996), the coal company challenged, on procedural due process grounds, OSM's denial of mining permits where federal regulation provided procedure that the mining company claimed was defective. Pittston represents another example

7

of a party contesting the content of a regulation; in that case, the procedure that was part of the regulation.

Unlike the plaintiffs in <u>Tug Valley</u>, <u>Watt</u>, and <u>Pittston</u>, Arch did not try to override existing regulatory language, read language into or out of a regulation. Rather, Arch simply sought a ruling on whether the five-year statute of limitations at 28 U.S.C. § 2462 applied to OSM's action. Section 2462 provides:

> Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued . . . .

28 U.S.C. § 2462.

Arch's invocation of the statute of limitations as an affirmative defense suggests that the OSM regulations themselves are not the problem. This defense is not analogous to a direct attack on the regulations since there is no statute of limitations written into SMCRA. Arch claims only that OSM's actions were not taken in accordance with § 2462. This claim did not require the district court to consider the merits of OSM's permit-blocking regulation. Thus, since the questions Arch presents are when and how to apply the ownership or control rule as written, not whether it is flawed, Arch's invocation of § 2462 is not an attack upon the regulation itself.

Policy considerations do not weigh against granting jurisdiction to the court below. One of the reasons for giving the United States District Court for the District of Columbia exclusive jurisdiction over regulatory challenges is to prevent conflicting decisions by various courts on mining regulations. <u>Watt</u>, 741 F.2d at 40. Applications of the statute of limitations by other district courts does not require content evaluation of the regulations and does not present a threat to continuity of regulatory enforcement.

We conclude that the court below properly exercised subject matter jurisdiction over Arch's statute of limitations defense.

8

V.

Before this Court can evaluate whether OSM's enforcement action is barred by the statute of limitations, we must also evaluate the facts to determine whether this case was ripe for judicial review by the district court. We find that it was.

For a case or controversy to be ripe for judicial review, it must involve "an administrative decision [that] has been formalized and its effects felt in a concrete way by the challenging parties." Charter Fed. Sav. Bank v. Office of Thrift Supervision, 976 F.2d 203, 208 (4th Cir. 1992) (citing Pacific Gas & Elec. v. Energy Resources Comm'n, 461 U.S. 190, 200 (1983)). This description and others attempt to flesh out the holding of the seminal case on this point, Abbott Laboratories v. Gardner, 387 U.S. 136 (1967), overruled on other grounds by Califano v. Sanders, 430 U.S. 99 (1977). Abbott requires that two questions be asked: (1) are the issues fit for judicial review and (2) will hardship fall to the parties upon withholding court consideration? Id. at 149. We will examine each prong in turn.

We have clarified the first prong of the Abbott test:

> A case is fit for judicial decision where the issues to be considered are purely legal ones and where the agency rule or action giving rise to the controversy is final and not dependent upon future uncertainties or intervening agency rulings.

Charter Federal, 976 F.2d at 208, citing Abbott, 387 U.S. at 149. The critical facts are not disputed in our case and, thus, the district court was called upon to consider the legal questions of the case. Accordingly, OSM focuses its argument on convincing this Court that the agency's enforcement action against Arch was not final, and the second of the requirements stated in Charter Federal has thereby not been met.

OSM asserts that it still has made no decision as to whether to link Arch to Greendale, and therefore its action is not final. The agency's presumption linking the two companies through the ownership or control rule has yet to proceed through all of OSM's administrative

9

channels. Arriving at an official decision would involve a multi-step process, beginning with a written staff recommendation and ending with a decision from OSM's director in Washington, D.C.

For all practical purposes, however, the decision has been made. After exchanging several letters with OSM in which it attempted to explain why it was neither an owner nor a controller of Greendale, Arch received the final letter from the agency dated September 30, 1994, which related the following:

> Arch is a presumed controller of Greendale pursuant to 30 C.F.R. § 773.5(b)(6) . . . . If no response is received by the end of the 30 day period, Arch will be entered in the Applicant/Violator System ["AVS"] as an owner and controller of Greendale based on the information in our files.

Once entered into the AVS, Arch would be linked to Greendale for agency purposes of reviewing the permits already issued to Arch, and for any future permits for which Arch may apply. Arch filed suit because it "had no additional evidence to provide and so informed the agency."

We agree with the district court's determination on this point:

> Arch has no additional rebuttal evidence to provide. As a result, there can be little doubt OSM intends to enter Arch into the AVS as linked to Greendale, and therefore permit-blocked, in the immediate future. The Court is thus of the opinion the action giving rise to this controversy is final and not dependent upon future uncertainties or contingencies.

Arch Mineral, 894 F. Supp. at 981.

OSM describes the 30-day letter process as it existed at the time of its correspondence with Arch, and cites it as support for the proposition that Arch might have avoided AVS listing simply by keeping up the letter exchange. If, after receiving an OSM letter stating a presumed link, the party issues an explanation which OSM deems "unpersuasive", OSM then issues a second letter explaining its reasoning

10

and inviting further response. <u>Pittston Co. v. Lujan</u>, 798 F. Supp. 344, 346 (W.D. Va. 1992). If the party fails to respond within ten days, the information is entered into the AVS; if a response is made, a determination of ownership or control is made. <u>Id.</u> at 346. Based on this procedure, OSM maintains that the agency's 30-day letters mandate the entry of a link on the AVS only if an entity fails to respond at all. This process suggests that a party could forestall an AVS listing simply by making a hollow reply containing no new evidence of why a link should not be made. Under the specific facts of the instant case, we find that Arch's failure to make such a reply does not preclude it from asserting the statute of limitations defense.

Further, OSM suggests that, even if Arch had no additional rebuttal evidence to offer, the agency should have been given more time to unearth evidence through its own investigations. This contention is unconvincing in light of the fact that OSM told Arch in the September 1994 letter that the presumption of ownership and control could only be rebutted by <u>Arch's</u> submittal of "additional evidence." OSM's own investigations presumably began before May 1993 when it first gave Arch notice of its presumed link to Greendale, allowing the agency a significant amount of time in which to determine what evidence linked the two companies.[1]

OSM's strongest argument on the finality issue is that it should have been given longer to evaluate the issues raised in Arch's last response. The district court apparently regards Arch's final response to OSM's September 30, 1994, letter of presumption as giving no new evidence which might rebut that presumption. <u>Arch Mineral</u>, 894 F. Supp. 974. The court below, however, does not evaluate the contents of Arch's final response to OSM, dated October 18, 1994. That letter does respond to points raised in OSM's September letter and gives specific reasons why Diamond Shamrock did not have control of Greendale. Thus, OSM contends that a suit was filed before the agency was able to respond to Arch's October letter.

_____

[1] Approximately six years had passed between Arch's acquisition of Diamond Shamrock in 1987 and the agency's first letter of presumption to Arch in 1993. OSM has offered no evidence that it continues its investigation, nor has it given any indication that evidence exists which could alter its presumption.

11

While the district court does not suggest that OSM's September letter constituted a final action, the court found that the agency may take such action "without further notice at any moment." Id. at 980. In finding that OSM had taken the equivalent of final action, the district court might have specifically decided that Arch's October letter to OSM provided no new information to the agency, thus leading to the inevitable confirmation of OSM's presumption, or by deciding that the same decision was imminent because OSM had not responded to the company's October letter when Arch filed its complaint almost three months later.

Our decision in Fort Sumter Tours v. Andrus leads us to conclude that the first prong of the Abbott test is met. Fort Sumter Tours, Inc. v. Andrus, 564 F.2d 1119 (4th Cir. 1977). OSM describes the facts of the case well:

> That action arose from a statute granting preferential renewal rights to existing concessioners of the Department of the Interior. The Department advised Fort Sumter, the existing concessioner, of its intent to negotiate a new contract, conditioned, however, on Fort Sumter's agreement to certain terms in a competing proposal, with the failure to accept those terms constituting a waiver of preferential rights. Fort Sumter filed suit, asserting that the conditional offer was an improper denial of its preferential rights. Fort Sumter also advised the Department that it was accepting the offer, and would meet the additional terms if its suit was unsuccessful. The Department, however, advised Fort Sumter that it construed that conditional acceptance as a rejection and a waiver of preferential rights.

Brief of Appellant (id. at 1122-3).

In Fort Sumter we held that the two-part Abbott test was met when the Department imposed new conditions upon the renegotiation of Fort Sumter's contract and informed Fort Sumter of its decision to negotiate with another concessioner. In response to claims that the Department's decision was not a "final agency action" under 5 U.S.C. § 704, we held that "[w]hile it is generally true that judicial review awaits the issuance of a formal administrative order enforceable

12

against a person or class of persons, such action is not an absolute prerequisite to judicial review." Fort Sumter , 564 F.2d at 1123 (citing Abbott, 387 U.S. 136).

The decision of whether Fort Sumter applies to the instant case turns on the legal conclusion we draw from the facts before us. We accept the argument that placing Arch on the AVS had become a foregone conclusion, simply a formality, at the time this case was commenced, and thus we "take a functional approach in resolving [this] ripeness question" and find that it is ripe for judicial review. Id.

We find the instant case to be readily distinguishable from two cases relied upon by OSM in which the agencies involved had not taken sufficient steps to make their final action possible "without notice at any moment." Arch Mineral Corp. v. Babbitt, 894 F. Supp. 974, 980. In Charter Fed. Sav. Bank v. Office of Thrift Supervision, 976 F.2d 203 (4th Cir. 1992), a financial institution sought a ruling from the FDIC as to the enforceability of a contract before the FDIC even threatened any action against the institution. We held that the case was not ripe for review. Id. at 207. In Appalachian Energy Group v. Environmental Protection Agency, 33 F.3d 319 (4th Cir. 1994), we found that judicial review was not proper for a challenge to an internal EPA memorandum discussing a proposed new permitting system.

Our decision on this matter is supported by decisions of the First Circuit. We embrace the reasoning of the First Circuit:

> [A controversy is] sufficiently particularized. . . [and] final . . . [if it is] at least a firm (and perhaps binding) adoption of a position by the agency with regard to a course of conduct on the part of a member of the regulated industry which does not require further administrative action other than the possible imposition of sanctions.

Northeast Airlines, Inc. v. CAB, 345 F.2d 662, 664 (1st Cir. 1965). In Northeast Airlines, the Civil Aeronautics Board took final action when it issued an order setting forth its "interpretation of the [Federal Aviation] Act as applied to the specific facts alleged by Northeast in its petition." Id. at 664. OSM's presumption of ownership and control,

13

coupled with the fact that Arch had no further evidence with which to rebut the presumption, can logically constitute a "firm (and perhaps binding) adoption of a position by the agency." Further, if the presumption could not be challenged by new evidence from Arch, the only step left was the imposition of the sanction: listing Arch on the AVS.

In Roosevelt Campobello International Park v. United States EPA, 684 F.2d 1034 (1st Cir. 1982), the court stated the Northeast holding in the negative when it found that an agency action was not final "if it makes no change in the status quo itself, but requires `further administrative action other than the possible imposition of sanctions' before rights, obligations or duties arise." Id. at 1040. Arch claims that OSM's September 30, 1994, letter was so certain to lead to permit-blocking as to constitute the sanction itself. We agree.

Given the degree of certainty of OSM's decision, and our freedom under Fort Sumter and Abbott not to be bound by a formalistic approach to reviewing agency decisions, we label OSM's action "final." Also, since the factual record is well-developed, and since Arch seeks to bar the agency's action based upon the statute of limitations, 28 U.S.C. § 2462, and avoid being linked to Greendale under the ownership and control rule, purely legal issues are in controversy. Thus, the first prong of the Abbott two-prong test has been met.

The second prong of the test asks the court to determine "whether hardship will fall to the parties upon withholding court consideration." Abbott, 387 U.S. at 148. When calculating whether the action in Fort Sumter was ripe for review, we also considered the cost to the parties of delaying judicial review. Fort Sumter , 564 F.2d at 1124.

The district court interpreted the facts to find that Arch faced an "immediate" threat of being entered into the AVS, and that this would inflict "immense" harm on Arch. Arch Mineral, 894 F. Supp. at 981. "If Arch is linked to Greendale by the AVS, its operating subsidiaries will be blocked from obtaining new permits and from obtaining permit renewals and modifications required for Arch's existing operations." Id. (citing 30 C.F.R. § 773.15(a)). The court properly noted possible effects of an AVS listing on Arch's present and future mining and reclamation projects through canceled or scaled back projects,

14

increased costs for operation, loss of business reputation, disruptions in coal delivery, and job losses for workers. Id.

OSM admits that it could list Arch on the AVS without notice, but the agency attempts to appease us regarding the inevitable costs of such a listing by noting Arch's post-listing avenues of review. The agency notes that, prior to permit denial or suspension, Arch could seek an administrative review and request temporary relief from the agency pending that review. See Pittston Co. v. Lujan, 798 F. Supp. 346, 346 (W.D. Va. 1992); 43 C.F.R. §§ 4.1380-4.1387. Such temporary relief could also be given after an AVS listing is made by pursuing an administrative appeal under 30 C.F.R. § 773.24(a)(1) and (d)(2)(ii), and 43 C.F.R. § 4.1386. Further, once placed in the AVS, a district court could exercise its equitable powers and grant relief pursuant to SMCRA § 526(c), 30 U.S.C. § 1276(c).

Even given the possible options for relief, the fact remains that, once listed in the AVS, punitive consequences follow. Therefore, the district court sufficiently examined the likelihood of hardship to the parties and properly determined that the second prong of the Abbott test was met.

Both prongs of the Abbott test being met, this controversy is ripe for judicial review.**2**

VI.

Having earlier determined that the district court had subject matter jurisdiction to consider the applicability of the statute of limitations, the question now is whether 28 U.S.C. § 2462, in fact, bars OSM from permit-blocking Arch.

The statute of limitations in question provides that"an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless com-

_____

**2** We do not require Arch to make the Hobson's choice suggested by OSM: either wait until the company is listed in the AVS and suffer the incumbent economic and reputation loss, or pay the penalties and bring an action against OSM for a refund.

15

menced within five years from the date when the claim first accrued. . . ." 28 U.S.C. § 2462.**3** If OSM's 1993 action against Arch is construed as a "civil fine, penalty, or forfeiture" then it was brought too late because November 8, 1986 (the date the penalties against Greendale and Diamond Shamrock Coal took effect because no appeal was made), is the date of accrual of the action.**4**

OSM maintains that the statute of limitations does not apply. The agency argues that it "is not assessing penalties against Arch, nor is it bringing an action to recover penalties from Arch. . . . [r]ather, OSM is making a determination of ownership or control which, if entered into the AVS, will be applied to the review of subsequent permit applications or existing permits." Brief of Appellant at 29. OSM's argument is not convincing for two reasons.

First, OSM's own regulations suggest that a link through the AVS constitutes a civil fine or penalty:

> [W]here the permittee was linked to the violation, penalty, or fee through ownership or control under the violations review criteria . . . the permittee continues to be responsible for the violation, penalty, or fee."

30 C.F.R. § 773.20(b)(iii). Consistent with this regulation, the agency's letter of May 21, 1993, told Arch that an AVS listing would make the company liable for "civil penalties in the amount of $22,500.00" which were incurred by Greendale. Further, while OSM is correct that the AVS is used to review permit applications and permits already issued, the very listing on the AVS establishes the link which is at once both the penalty and the means of enforcing that penalty.

The second reason why the statute of limitations bars OSM from acting against Arch in this instance is the holding in <u>3M Company v.</u>

_____

**3** OSM's claim to Greendale's unpaid abandoned mine land (AML) fees was found by the district court not to be subject to the statute of limitations. Arch does not contest this ruling.

**4** The district court found this to be the accrual date and OSM does not contest the finding. <u>Arch Mineral</u>, 894 F. Supp. at 984.

16

Browner, 17 F.3d 1453 (D.C. Cir. 1994). In that case, 3M petitioned for review of EPA's assessment of civil penalties for violations of the Toxic Substances Control Act (TSCA). Id. In making the determination that EPA's action was an "action, suit or proceeding" pursuant to § 2462, the 3M court reasoned that there was no evident rationale for applying the statute of limitations to proceedings brought in court and not to those brought by an administrative agency. Id. at 1456-1457. Further, in concluding that the EPA's proceeding for the assessment of civil penalties was "for the enforcement of" a penalty under § 2462, the court held that "enforcement" could be read to mean "imposition." Id. at 1458. See also Johnson v. SEC, 87 F.3d 484, 485 (D.C. Cir. 1996) (where SEC proceeding resulting in censure and disciplinary suspension of securities industry supervisor was a proceeding for the enforcement of a penalty pursuant to§ 2462). Reading "enforcement" to mean "imposition" "forecloses stale claims, one of the functions of a statute of limitations, since it is in the administrative proceeding that evidence is taken, findings are made and liability determined." Id. at 1459. We adopt the reasoning of the D.C. Circuit in 3M and apply it to the instant case. In both 3M and this case, administrative proceedings are at issue. Also, just as the assessment proceedings in 3M sought to impose civil penalties, so did the steps taken to list Arch in the AVS.

OSM seeks to avoid the holding of 3M by claiming that an AVS listing is simply a permit review tool "to determine whether an entity owned or controlled by the violator had outstanding violations." Brief of Appellant at 32. However, an AVS listing is, in addition to being an aid for reviewing present or potential permittees, a penalty in itself. Once listed, Arch would not only be permit-blocked, but also automatically subject to the "civil penalties" initially imposed against Greendale. We thus conclude that the civil penalties sought by OSM were time-barred.[5]

_____

[5] The court below ruled on this same statute of limitations question in a subsequent case and held that § 2462 bars OSM from enforcing civil penalties levied against a party where violations occurred more than five years prior to the date OSM began issuing penalties. The OSM sought to deny permit applications from an entity linked to the violator through the ownership and control rule. Balmer v. Babbitt, Civ. No. 96-0010 (S.D. W.Va., May 28, 1996). The appeals from this decision are in abeyance pending the disposition of the instant case.

VII.

We find that the district court had subject matter jurisdiction to consider Arch's statute of limitations defense, the case was ripe for judicial review, and the five-year statute of limitations bars OSM's imposition of civil penalties. For these reasons, we

AFFIRM.

18